LEOTA SWANSON, APPELLANT, V. DAVID H. PTAK,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
WILMA L. PRITCHARD, DECEASED, APPELLEE.

682 N.W.2d 225

Filed July 2, 2004. No. S-03-183.

George H. Moyer, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellant.

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Leota Swanson brought this action against David H. Ptak to recover an inheritance she contends she should have received

from an estate. Ptak, an attorney, serves as personal representative of the estate. The district court for Madison County granted Ptak's motion for summary judgment and dismissed the action after determining that Ptak owed no legal duty to Swanson. Swanson perfected this appeal, which we removed to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTS

Allan L. Pritchard and Wilma L. Pritchard were married late in their lives and had no children. Prior to the marriage, Allan had accumulated a substantial estate. Allan died intestate on April 19, 1997, in Norfolk, Nebraska, leaving Wilma as his only heir. Wilma died intestate on August 21, 1998, in Norfolk, leaving as her only legal heirs a brother, Thomas Fillmore of Klamath Falls, Oregon, and a sister, Nona Fillmore Wittler of Hoskins, Nebraska, now deceased.

Swanson is Allan's niece. After Wilma's death, Swanson, Wittler, and other family members went to Ptak's law office in Norfolk to inquire about her estate. Ptak had performed legal services for both Allan and Wilma during their lifetimes. Ptak generally advised the family members that he was not aware of any will left by Wilma and that under the laws of intestate succession, Fillmore and Wittler would inherit the entire estate unless they agreed to surrender half of the estate to Allan's family, including Swanson. Ptak diagrammed for the family members the approximate distribution of the estate if such an agreement were reached. Under this scenario, Swanson would have received one-fourth of the estate, amounting to approximately $250,000.

Ptak was subsequently appointed the personal representative of Wilma's estate. On October 7, 1998, Ptak sent a letter to Fillmore, Swanson, and the other family members, describing how the estate would be distributed if Wilma's heirs agreed to give 50 percent to Allan's family, including Swanson. In this letter, Ptak stated:

> If this is correct and you are agreeable to this distribution of the estate, I will need to prepare an agreement to be signed by Wilma's heirs which consents to this distribution. I met with Nona Wittler last week and went over this distribution with her and she is agreeable to it.

Swanson continued to receive correspondence from Ptak, in his capacity as personal representative, regarding the estate. The correspondence generally indicated that the estate would be distributed half to Wilma's heirs and half to Allan's heirs. In June 1999, Swanson informed Ptak that she and her husband wished to purchase a new condominium and asked if she could obtain a partial distribution of her one-fourth interest in the estate. On September 13, 1999, Ptak issued Swanson a check for $99,000 as a partial distribution.

In late November 1999, Ptak received a telephone call from Fillmore's wife informing him that Fillmore had never agreed to share the estate with Swanson and other descendants of Allan. Shortly thereafter, Ptak received letters from Fillmore and Wittler confirming that they would not agree to share the estate with Allan's descendants. In his subsequent deposition testimony, Fillmore denied that he had ever agreed to share any portion of the estate with Swanson.

Upon receipt of the letters from Fillmore and Wittler, Ptak wrote to Swanson and the other family members involved advising them that Fillmore and Wittler had notified him that they would not consent to an equal division of the estate with Allan's family. This was the first notice Swanson had that Ptak had not obtained a written agreement from Wilma's heirs to share the estate with Allan's family. Ptak requested that Swanson return the $99,000 partial distribution and eventually filed suit as the personal representative to recover the money from Swanson. The record in this case does not reflect any final disposition of that separate proceeding, in which Swanson asserted a counterclaim against Ptak in his capacity as personal representative.

Swanson filed this action against Ptak in his individual capacity. She alleged three theories of recovery: professional negligence, breach of contract, and negligent failure to furnish accurate information. With respect to all three theories of recovery, she alleged that Ptak's negligence caused her (1) to incur legal fees defending against Ptak's lawsuit for the return of the $99,000, (2) to make gifts to each of her two children of $10,000, and (3) to fail to receive the remaining $90,900 of her one-fourth share of Wilma's estate. Pursuant to a motion to strike by Ptak, the district court struck the allegation that

Ptak's negligence caused Swanson to make the $10,000 gifts to her children.

In granting Ptak's motion for summary judgment and dismissing the action, the district court determined as a matter of law that Ptak owed no legal duty to Swanson.

## ASSIGNMENTS OF ERROR

Swanson assigns, restated and consolidated, that the district court erred in (1) finding that Ptak owed her no duty, (2) finding there was no genuine issue of material fact and sustaining Ptak's motion for summary judgment, and (3) striking the language regarding the gifts she made to her children from the petition.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004); *First Colony Life Ins. Co. v. Gerdes*, 267 Neb. 632, 676 N.W.2d 58 (2004). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *First Colony Life Ins. Co. v. Gerdes, supra*; *Misle v. HJA, Inc.*, 267 Neb. 375, 674 N.W.2d 257 (2004).

Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003); *Fu v. State*, 263 Neb. 848, 643 N.W.2d 659 (2002). When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *Fu v. State, supra*; *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 262 Neb. 66, 628 N.W.2d 697 (2001).

## ANALYSIS

The issue of law presented in this case is whether Ptak had a duty to secure an inheritance for Swanson from the estate. of Wilma. We begin by noting that upon Wilma's death, Swanson

had no legal entitlement to any portion of the intestate estate because she was not a legal heir of the deceased. See Neb. Rev. Stat. § 30-2303 (Reissue 1995). Any "inheritance" which Swanson might receive from the estate could only occur as a result of a gratuitous undertaking by the legal heirs to share the estate with Swanson and the other members of Allan's family. See Neb. Rev. Stat. § 30-24,110 (Reissue 1995).

## PROFESSIONAL NEGLIGENCE

In her first theory of recovery, Swanson alleges that Ptak was acting as her attorney in his efforts to obtain the written agreement from Fillmore and Wittler. In her second theory of recovery, she asserts that Ptak breached a contract because he undertook to perform a service for her, i.e., to obtain the written agreement of Fillmore and Wittler to an equal division of the estate, and failed to do so. Although an attorney-client relationship rests in contract, an attorney's professional misconduct "does not give rise to a breach of contract action, but, rather, gives rise to a professional negligence action." *Gravel v. Schmidt*, 247 Neb. 404, 408, 527 N.W.2d 199, 202 (1995). We therefore consider Swanson's first and second theories of recovery as a single professional negligence claim against Ptak.

A cause of action for negligence depends upon the breach of a duty by the defendant to use due care to avoid injury to the plaintiff. *Ames Bank v. Hahn*, 205 Neb. 353, 287 N.W.2d 687 (1980). Under Nebraska law, a lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of his or her duties, but ordinarily this duty does not extend to third parties absent facts establishing a duty to them. *Landrigan v. Nelson*, 227 Neb. 835, 420 N.W.2d 313 (1988); *Ames Bank v. Hahn, supra.* Thus, in determining whether Ptak owed a professional duty to Swanson, we must first determine whether she was his client.

Swanson admitted that she had no written agreement with Ptak regarding legal representation and that he never billed her for professional services. However, she "felt" that as personal representative of the estate, he was representing her legal interests. This perception on the part of Swanson is contrary to the principle that when an attorney is employed to render services in

settling an estate, he or she acts as attorney for the personal representative. See *In re Estate of Wagner*, 222 Neb. 699, 386 N.W.2d 448 (1986). See, also, *In re Estate of Snover*, 4 Neb. App. 533, 548, 546 N.W.2d 341, 352 (1996) ("when a personal representative hires an attorney, the *personal representative* is the attorney's client, not the estate"). Thus, any legal services which Ptak performed in connection with the administration of the estate of Wilma were on behalf of himself as personal representative of the estate.

Swanson argues that while there was no written agreement whereby Ptak would serve as her lawyer, the existence of an attorney-client relationship is implicit from his conduct with respect to the proposed agreement of Fillmore and Wittler to share the estate with Swanson. In this regard, Swanson relies on *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 458-59, 466 N.W.2d 499, 506 (1991), in which we stated:

> "An attorney-client relationship ordinarily rests on contract, but it is not necessary that the contract be express or that a retainer be requested or paid. The contract may be implied from the conduct of the parties. . . . The relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . . In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it."

Quoting *Kurtenbach v. TeKippe*, 260 N.W.2d 53 (Iowa 1977).

In *McVaney*, we held that an attorney-client relationship existed in the absence of an express employment agreement when there was evidence of a longstanding relationship between the client and the attorney and there was both general and specific discussion of what action the client wished the attorney to undertake with regard to a specific matter. In this case, there is no evidence that Ptak had ever served as Swanson's attorney. Her primary argument in support of her assertion that there was an implied attorney-client relationship with Ptak was that she

understood that Ptak was advocating for her. This understanding was based upon the fact that Ptak suggested that the division of the estate between Allan's family and Wilma's heirs would be fair and then undertook steps to seek the consent of Fillmore and Wittler to such distribution. Swanson further argues that the $99,000 advance distribution which Ptak made to her from the estate is evidence that he was advocating her position and that his efforts to settle the dispute after it became apparent Fillmore did not intend to sign the agreement demonstrate that Ptak was acting as her attorney. Although Swanson's unilateral belief that Ptak was acting as her attorney may have been sincere, it was based upon a misunderstanding of his duties as personal representative of the estate. We conclude as a matter of law that there are no facts in this record upon which an attorney-client relationship between Ptak and Swanson can be implied.

This does not end the inquiry, inasmuch as our law recognizes that an attorney's duty may extend to a third party if there are "facts establishing a duty." *Landrigan v. Nelson*, 227 Neb. 835, 836, 420 N.W.2d 313, 314 (1988). Accord *Ames Bank v. Hahn*, 205 Neb. 353, 287 N.W.2d 687 (1980). However, there are no such facts in this record. We have held that the duty of a lawyer who drafts a will on behalf of a client does not extend to heirs or purported beneficiaries who claim injury resulting from negligent draftsmanship. *Lilyhorn v. Dier*, 214 Neb. 728, 335 N.W.2d 554 (1983); *St. Mary's Church v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982). Here, the basis for extending the lawyer's duty to a third party is even more tenuous than in those cases, given the nature of Swanson's claim to a share of the estate. No lawyer, and particularly not one who serves as the personal representative of an intestate estate, could compel persons who are lawful heirs to share the estate with persons who are not. We therefore conclude that as an attorney, Ptak had no professional duty to secure a gratuitous agreement from Wilma's heirs for the benefit of Swanson.

### Negligent Failure to Furnish Accurate Information

As an alternative theory of recovery, Swanson alleges that as an attorney and personal representative of the estate, Ptak had a

duty "as a trustee" to furnish accurate information to Swanson regarding the administration of the estate and her "status as a beneficiary." She further alleges that Ptak breached this duty by providing her with information which he knew or should have known to be inaccurate.

The precise legal underpinning of this theory of recovery is unclear. Swanson cites *Johnson v. Richards*, 155 Neb. 552, 52 N.W.2d 737 (1952), in which this court held that a petition alleged extrinsic fraud sufficient to justify setting aside the probate of a will. No fraud is alleged here. Swanson also relies upon Restatement (Second) of Torts § 323 at 135 (1965), which provides that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking . . ." if certain conditions are met. Swanson alleges no "physical harm." She also relies on Restatement, *supra*, § 552 (1977), adopted by this court in *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 370, 518 N.W.2d 910, 921 (1994), which creates liability on the part of one who negligently supplies false information " 'for the guidance of others in their business transactions.' " The damages recoverable under this theory of liability are limited to " 'pecuniary loss caused . . . by . . . justifiable reliance upon the information.' " *Id.* at 370, 518 N.W.2d at 921, quoting Restatement, *supra.* Here, Swanson does not contend that Ptak furnished false information for her guidance in any "business transaction," and the damages she claims are not reliance damages, but, rather, the difference between the $99,000 advance she received and the total amount she would have received if Wilma's heirs had agreed to share the estate.

The record reflects that Ptak initially proceeded as personal representative of the estate under the belief, based upon statements made to him by Wittler in 1998, that Fillmore and Wittler would agree to share one-half of the estate with Swanson and other descendants of Allan. In 1999, when Fillmore and Wittler advised Ptak that they would not agree to this division of the estate, Ptak promptly notified Swanson. Fillmore denied that he had ever agreed to share any portion of the estate with Swanson.

These facts do not establish any legal duty on the part of Ptak in his individual capacity which would form the basis of the recovery sought by Swanson in this action.

## CONCLUSION

Finding no error in the conclusion of the district court that Ptak, in his individual capacity, owed no legal duty to Swanson, we affirm the judgment of dismissal.

AFFIRMED.

GERRARD, J., not participating.