Kristin Terk **BELT** and Kimberly Terk **Murphy** as the Joint Independent Executrixes of the Estate of David B. Terk, Deceased, Appellants,

v.

**OPPENHEIMER, BLEND, HARRISON & TATE, INC.,** Glen A. Yale, J. David Oppenheimer, and Kenneth M. Gindy, Appellees.

No. 04–03–00832–CV.

Court of Appeals of Texas, San Antonio.

June 16, 2004.

Barry Snell, Bayne, Snell & Krause, L.L.P., San Antonio, for appellants.

David M. Winters, Texas RioGrandel Legal Aid, Inc., Mark J. Cannan, David Stephenson, Clemens & Spencer, P.C., San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, and KAREN ANGELINI, Justice.

**OPINION**

CATHERINE STONE, Justice.

This is a legal malpractice action brought by the independent executrixes of the estate of David Terk, deceased, against the law firm and attorneys who provided estate planning services to Terk during his lifetime. The trial court granted summary judgment in favor of the attorneys without stating the grounds for judgment. We hold that the independent executrixes of David Terk's estate have no cause of action against the attorneys due to a lack of privity; thus, we affirm the trial court's judgment.

## BACKGROUND

Kristin Terk Belt and Kimberly Terk Murphy (the "Terks") are the joint executrixes of the estate of their deceased father, David Terk. They brought this legal malpractice action against attorneys Glen Yale, David Oppenheimer, and Kenneth Gindy and their law firm Oppenheimer, Blend, Harrison, and Tate, Inc. (collectively "the Attorneys"), contending the firm negligently advised their father regarding his estate plan and negligently drafted their father's will. The Terks claim their father's estate incurred more than $1.5 million in additional estate taxes because of the Attorneys' negligent acts. The Attorneys moved for summary judgment, arguing the Terks' malpractice claim suffers a fatal defect—the Terks were not in privity with the Attorneys and thus could not establish the duty requisite to a legal malpractice claim. The trial court granted the Attorneys' motion and the Terks appealed.

## STANDARD OF REVIEW

We review a trial court's summary judgment ruling under a *de novo* standard of review. *Valores Corporativos, S.A. de C.V. v. McLane Co.,* 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied). We will uphold a traditional summary judgment only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Tex. Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 252 (Tex.2002). In reviewing a traditional motion for summary judgment, we resolve every doubt and indulge every reasonable inference in the nonmovant's favor. *Id.* All evidence favorable to the nonmovant will be taken as true. *Id.*

## DISCUSSION

█ The Terks contend the trial court erred by granting the Attorneys' summary judgment motion because the court based its decision upon a case that was wrongly decided by this court, *Estate of Arlitt v. Paterson,* 995 S.W.2d 713 (Tex.App.-San Antonio 1999, pet. denied). In *Estate of Arlitt,* the personal representative of the estate of William Arlitt brought a legal malpractice claim against the attorneys who provided Arlitt estate planning services before his death. 995 S.W.2d at 717. The attorneys responsible for providing the estate planning services subsequently filed a motion for summary judgment, arguing the personal representative was not in privity with the attorneys and thus could not establish the duty requisite to a malpractice claim. *Id.* The trial court granted the attorneys' motion and we affirmed based on a lack of privity. *Id.* at 720. We reasoned that no malpractice cause of action accrued prior to Arlitt's death because the injuries to Arlitt's estate arose after Arlitt's death; consequently, there was no cause of action to which the estate could succeed. *Id.* We stated that "the only legal malpractice cause of action [one] might pursue in her capacity as personal representative is one that accrued in favor of the estate after [testator's] death." *Id.* Because we determined the summary judgment evidence conclusively established the attorneys did not represent the personal representative in her capacity as personal representative of Arlitt's estate, we concluded it was proper for the trial court to render judgment against the personal representative on the legal malpractice claim brought by her in her capacity as personal representative. *Id.*

In our analysis in *Estate of Arlitt* we noted that *Barcelo v. Elliott,* 923 S.W.2d 575 (Tex.1996) required us to hold as we did. *See id.* In *Barcelo,* the supreme court considered the issue of whether an attorney who negligently drafts a will or trust agreement owes a duty of care to persons intended to benefit under the will

or trust, even though the attorney never represented the intended beneficiaries. *Barcelo,* 923 S.W.2d at 576. The court held that the attorney owed no duty to the beneficiaries because the attorney did not represent the beneficiaries. *Id.* The court reasoned that "the greater good is served by preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent. This will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation." *Id.* at 578–79. Although *Barcelo* does not directly concern the issue of whether a personal representative of an estate can maintain a malpractice action against a testator's attorneys, we nevertheless determined the supreme court's rationale in that case applied to the personal representative issue before us in *Estate of Arlitt. See Estate of Arlitt,* 995 S.W.2d at 720.

In the case at bar, the Terks have asked this court to reconsider our holding in *Estate of Arlitt,* urging us to adopt the holding of our sister court in *Traver v. State Farm Mutual Auto. Insurance Co.,* 930 S.W.2d 862 (Tex.App.-Fort Worth 1996), *rev'd on other grounds,* 980 S.W.2d 625 (Tex.1998). In *Traver,* Mary Davidson was involved in an automobile accident with another driver. 930 S.W.2d at 865. The passenger of the other vehicle sued Davidson and was awarded $375,000 in damages by the jury. *Id.* at 865–66. Davidson died shortly after her trial. *Id.* at 866. The executor of Davidson's estate subsequently brought suit against Davidson's insurer, State Farm, alleging the attorney hired by the company to defend Davidson in the personal injury suit committed malpractice during the course of his representation. *Id.* at 870. The trial court granted summary judgment in State Farm's favor. *Id.* at 866. The executor of Davidson's estate appealed. *Id.* On ap-

peal, State Farm argued that Davidson's negligence action did not survive because legal malpractice claims are not assignable. *Id.* at 871. The court of appeals, however, disagreed:

> We see no reason why an estate that has been injured or depleted by the wrong of another should not be compensated whether the injured party is living or not. Allowing a legal malpractice claim to survive the death of either the client or the attorney does not violate the sanctity of the attorney-client relationship or commercialize legal malpractice lawsuits.

*Id.* Accordingly, the court held that a legal malpractice cause of action survives the death of either party and can be prosecuted by the client's estate representative. *Id.*

Although the Terks believe that *Traver* is instructive on the issue before us, we cannot agree. *Traver* is factually distinguishable from the case at bar. The malpractice action in *Traver* accrued during the lifetime of the decedent, whereas the malpractice action in our case accrued after David Terk's death. *See Estate of Arlitt,* 995 S.W.2d at 720 (reasoning that no malpractice cause of action accrued prior to Arlitt's death because the injuries to Arlitt's estate arose after Arlitt's death). Moreover, the *Traver* court failed to reconcile its holding with that of the supreme court in *Barcelo.* Consequently, we are not compelled to overrule *Estate of Arlitt* based on our sister court's holding in *Traver.*

We recognize that the Terks have also raised several policy arguments in support of their position; however, such arguments have been adversely answered by the supreme court in *Barcelo.* It is a tenet of our judicial system that we, as an intermediate appellate court, are bound by

pronouncements of the supreme court, even though we may entertain a contrary opinion. Because we are confined to follow the dictates of *Barcelo* in this instance, the Terks' sole issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.