Kristin Terk **BELT** and Kimberly Terk **Murphy**, Joint Independent Executrixes of the Estate of David B. Terk, Deceased, Petitioners,

v.

**OPPENHEIMER, BLEND, HARRISON & TATE, INC.**, Glen A. Yale, J. David Oppenheimer and Kenneth M. Gindy, Respondents.

No. 04–0681.

Supreme Court of Texas.

Argued Sept. 29, 2005.

Decided May 5, 2006.

Rehearing Denied June 30, 2006.

---

Barry Snell, Bayne Snell & Krause, San Antonio, for Petitioner.

David Stephenson, Mark J. Cannan and West Worrell Winter, Clemens & Spencer, P.C., San Antonio, for Respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

■ Kristin Terk Belt and Kimberly Terk Murphy (the Terks)—the joint, independent executors of their father David Terk's estate—sued several attorneys and their law firm, Oppenheimer, Blend, Harrison, & Tate, Inc. (collectively, the Attorneys) for legal malpractice. The Attorneys moved for summary judgment on the ground that estate planners owe no duty to the personal representatives of a deceased client's estate. The trial court granted the motion, and the court of appeals affirmed the judgment. We hold, to the contrary, that there is no legal bar preventing an estate's personal representative from maintaining a legal malpractice claim on behalf of the estate against the decedent's estate planners. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for further proceedings.

## I

### Background

David Terk hired the Attorneys to prepare his will. After his death, the Terks became the joint, independent executors of their father's estate. As executors, the Terks sued the Attorneys for legal malpractice, alleging that the Attorneys were negligent in drafting their father's will and in advising him on asset management. They claim the estate incurred over $1,500,000 in tax liability that could have been avoided by competent estate planning.

In affirming the trial court's judgment for the Attorneys, the court of appeals cited *Barcelo v. Elliott*, in which we held that beneficiaries cannot maintain a malpractice cause of action against a decedent's estate-planning attorney because the attorney lacks privity with non-client beneficiaries and therefore owes them no

duty. 141 S.W.3d 706, 708–09 (citing *Barcelo*, 923 S.W.2d 575 (Tex.1996)). The Terks argue that the *Barcelo* rule bars only claims by beneficiaries suing for their own injuries and does not preclude suits brought by personal representatives on an estate's behalf. We granted the Terks' petition to consider whether personal representatives may bring legal malpractice claims on behalf of a decedent's estate. 48 Tex. Sup.Ct. J. 524 (Apr. 11, 2005).

## II

### Discussion

 Legal malpractice claims sound in tort. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989). The plaintiff must demonstrate "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex.1995).

██ While an attorney always owes a duty of care to a client, no such duty is owed to non-client beneficiaries, even if they are damaged by the attorney's malpractice. *See Barcelo*, 923 S.W.2d at 577. In *Barcelo*, we considered whether beneficiaries dissatisfied with the distribution of estate assets may sue an estate-planning attorney for legal malpractice after a client's death. *Id.* at 576. In that case, the intended beneficiaries of a trust, which was declared invalid after the client's death, sued the attorney who drafted the trust agreement. *Id.* We held that the non-client beneficiaries could not maintain a suit against the decedent's estate planner because "the greater good is served by

preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent." *Id.* at 578.

Several policy considerations supported our *Barcelo* holding. First, the threat of suits by disappointed heirs after a client's death could create conflicts during the estate-planning process and divide the attorney's loyalty between the client and potential beneficiaries, generally compromising the quality of the attorney's representation. *Id.* at 578. We also noted that suits brought by bickering beneficiaries would necessarily require extrinsic evidence to prove how a decedent intended to distribute the estate, creating a "host of difficulties." *Id.* We therefore held that barring a cause of action for estate-planning malpractice by beneficiaries would help ensure that estate planners "zealously represent[ed]" their clients. *Id.* at 578–79.

██ Thus, in Texas, a legal malpractice claim in the estate-planning context may be maintained only by the estate planner's client. This is the minority rule in the United States—only eight other states require strict privity in estate-planning malpractice suits.[1] In the majority of states, a beneficiary harmed by a lawyer's negligence in drafting a will or trust may bring a malpractice claim against the attorney, even though the beneficiary was not the attorney's client. *See, e.g., Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, 689 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Schreiner v. Scoville*, 410 N.W.2d 679, 683 (Iowa 1987).

---

1. *See Robinson v. Benton*, 842 So.2d 631, 637 (Ala.2002); *Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745, 751 (2001); *Nevin v. Union Trust Co.*, 726 A.2d 694, 701 (Me.1999); *Noble v. Bruce*, 349 Md. 730, 709 A.2d 1264, 1278 (1998); *Swanson v. Ptak*, 268 Neb. 265, 682 N.W.2d 225, 231 (2004); *Deeb v. Johnson*, 170 A.D.2d 865, 566 N.Y.S.2d 688, 689 (N.Y.App.Div.1991); *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (1987); *Copenhaver v. Rogers*, 238 Va. 361, 384 S.E.2d 593, 595 (1989).

The question in this case, however, is whether the *Barcelo* rule bars suits brought *on behalf of* the decedent client by his estate's personal representatives. Because most states allow beneficiaries to maintain estate-planning malpractice claims, only a handful of jurisdictions have considered this specific issue. *See, e.g., Beastall v. Madson*, 235 Ill.App.3d 95, 175 Ill.Dec. 865, 600 N.E.2d 1323, 1327 (1992); *Hosfelt v. Miller*, No. 97–JE–50, 2000 WL 1741909, 2000 Ohio App. LEXIS 5506, at *11–12 (Ohio Ct.App. Nov. 22, 2000); *Sizemore v. Swift*, 79 Or.App. 352, 719 P.2d 500, 503 (1986); *Rutter v. Jones, Blechman, Woltz & Kelly, P.C.*, 264 Va. 310, 568 S.E.2d 693, 695 (2002). We confront this question for the first time today.

■ Generally, in Texas an estate's personal representative[2] has the capacity to bring a survival action on behalf of a decedent's estate. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005); *see also* TEX. PROB. CODE § 233A (personal representative can institute suit for recovery of estate's personal property, debts or damages). Therefore, if the Terks' legal malpractice claim is brought on behalf of the decedent's estate and survives the decedent, the Terks may maintain a suit against the Attorneys.

### A

■ When no statute addresses the survivability of a cause of action, we apply common law rules. *Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex.App.—Fort Worth 1988, no writ). "[A]t common law all causes of action for damages die with the person of the party injured, or the person inflicting the injury, except such damages as grow out of acts affecting the property rights of the injured party." *Johnson v.*

*Rolls*, 97 Tex. 453, 79 S.W. 513, 514 (1904); *see also Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 34 (Tex.1963) (refusing to depart from long-standing rule that an action for damage to real or personal property survives the death of the owner). Thus, absent a statute providing to the contrary, a cause of action that is penal or personal in nature typically does not survive, while claims that are contractual in nature or affect property rights survive the death of either party. *See* 1 AM. JUR. 2D *Abatement, Survival and Revival* § 65 (2006).

■ We have never specifically considered whether a legal malpractice claim in the estate-planning context survives a deceased client. A claim that an estate planner's negligence resulted in the improper depletion of a client's estate involves injury to the decedent's property. *See* TEX. PROB. CODE § 3(z) (defining the "personal property" of an estate to include interests in goods, money, and choses in action); *see also Williams v. Adams*, 193 S.W. 404, 405 (Tex.Civ.App.—Texarkana 1917, writ ref'd) (tort claim alleging fraud, which resulted in financial loss to the plaintiff, survived the death of the defendant because it involved the wrongful acquisition of property); *Cleveland v. United States*, No. 00–C–424, 2000 U.S. Dist. LEXIS 18908, at *9 (N.D.Ill.Dec. 27, 2000) (tort claim for financial loss resulting from estate-planning malpractice deemed an action for damage to personal property). Moreover, when an attorney's malpractice results in financial loss, the aggrieved client is fully compensated by recovery of that loss; the client may not recover damages for mental anguish or other personal injuries. *See Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex.1999).

---

2. The definition of "personal representative" includes an "executor, independent executor, administrator, independent administrator, [or] temporary administrator, together with their successors." TEX. PROB. CODE § 3(aa).

 Thus, estate-planning malpractice claims seeking recovery for pure economic loss are limited to recovery for property damage. *See id.* Therefore, in accordance with the long-standing, common-law principle that actions for damage to property survive the death of the injured party, we hold that legal malpractice claims alleging pure economic loss survive in favor of a deceased client's estate, because such claims are necessarily limited to recovery for property damage.[3] *See Galveston, H. & S.A.R.R. v. Freeman,* 57 Tex. 156, 158 (Tex.1882) (a cause of action "brought for damage to the estate and not for injury to the person, personal feelings or character, ... upon the death, bankruptcy or insolvency of the party injured, passes to the executor or assignee as a part of his assets, because it affects his estate, and not his personal rights"); *see also Traver v. State Farm Mut. Auto. Ins. Co.,* 930 S.W.2d 862, 871 (Tex.App.—Fort Worth

1996) *rev'd on other grounds,* 980 S.W.2d 625 (Tex.1998) (legal malpractice claim arising from representation in personal injury case survives death of client).

The court of appeals found for the Attorneys after holding that its prior decision in *Estate of Arlitt v. Paterson* controlled. 141 S.W.3d at 708. In *Estate of Arlitt,* the court held that an estate-planning malpractice claim does not accrue during a decedent's lifetime—and therefore does not survive the decedent—because the estate's injuries do not arise until after death.[4] *See Estate of Arlitt v. Paterson,* 995 S.W.2d 713, 720 (Tex.App.—San Antonio 1999, pet. denied).

 We disapprove *Estate of Arlitt*'s holding that no legal malpractice claim accrues before death when an estate-planning attorney's negligent drafting results in increased estate tax consequences.

3. A number of other jurisdictions have allowed legal malpractice claims to survive a decedent. *See, e.g., Loveman v. Hamilton,* 66 Ohio St.2d 183, 420 N.E.2d 1007, 1008 (1981) (holding that, regardless of whether a legal malpractice action sounds in contract or tort, "the gist of the action...is the attorney's breach of his contractual obligation to represent his client"); *see also Jones v. Siesennop,* 55 Ill.App.3d 1037, 13 Ill.Dec. 800, 371 N.E.2d 892, 895 (1977) (action for legal malpractice could be construed as "personal property" within the meaning of the state's survival statute); *McStowe v. Bornstein,* 377 Mass. 804, 388 N.E.2d 674, 677 (1979); *Johnson v. Taylor,* 435 N.W.2d 127, 129 (Minn.Ct. App.1989); *Newbach v. Giaimo & Vreeburg,* 209 A.D.2d 222, 618 N.Y.S.2d 307, 308 (N.Y.App.Div.1994) (legal malpractice claim survives in favor of estate when decedent was injured by attorney's negligence during his lifetime).

4. Some states have used similar reasoning in determining that estate planning malpractice claims do not survive, and a few of those courts have held that language in their state's survival statute necessitated such a result. *See McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9, 15 (1999) (personal representative

could not bring tort-based malpractice claim on behalf of decedent; Arkansas's survival statute required decedent suffer injury or damages prior to death, but injury or damages caused by estate-planning malpractice did not occur until will took effect after death); *Rutter,* 568 S.E.2d at 695 (no survival action because claim did not "exist" prior to death—as required by Virginia's survival statute—since the client's estate did not suffer damage or injury until after client's death); *see also Brewer v. Davis,* 593 So.2d 67, 68 (Ala.1991) (state's survival statute precluded survival of a tort-based malpractice action that was not filed until after client's death). Other jurisdictions, however, have held such claims do not survive as a matter of common law. *See Deeb,* 566 N.Y.S.2d at 689 (in New York, malpractice claim did not survive because estate did not incur damages until after client's death); *Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161, 165 (1961) (noting that "the executor of an estate has no standing..., since in the normal case the estate is not injured by [negligent estate planning] except to the extent of the [attorney's] fees paid").

Even though an estate may suffer significant damages after a client's death, this does not preclude survival of an estate-planning malpractice claim. While the primary damages at issue here—increased tax liability—did not occur until after the decedent's death, the lawyer's alleged negligence occurred while the decedent was alive. *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 120 (Tex.2001) (legal malpractice claim accrues "when facts have come into existence that authorize a claimant to seek a judicial remedy"). If the decedent had discovered this injury prior to his death, he could have brought suit against his estate planners to recover the fees paid to them. *See, e.g., Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex.1999) (client need not prove actual damages in order to obtain forfeiture of attorney's fees for the attorney's "clear and serious" breach of fiduciary duty to the client). In addition, the decedent could have recovered the costs incurred in restructuring his estate to minimize tax liability. *See, e.g., Porter v. Ogden, Newell, & Welch,* 241 F.3d 1334, 1337 (11th Cir.2001) (allowing suit to recover client's costs, incurred during his lifetime, in curing problems created by negligent drafting of trust document, including funds expended in seeking judicial reformation of the trust and in lobbying the Florida legislature to change law affecting the trust). Therefore, if the injury occurs during the client's lifetime, a claim for estate-planning malpractice survives the client's death.[5] *See Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992) (decedent must

suffer an "actionable wrong" during lifetime for claim to survive).

**B**

 Because legal malpractice claims survive in favor of the decedent's estate, the estate has a justiciable interest in the controversy sufficient to confer standing. *See Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 850 (Tex.2005). A decedent's estate, however "is not a legal entity and may not properly sue or be sued as such." *Id.* at 849. (citing *Price v. Estate of Anderson,* 522 S.W.2d 690, 691 (Tex.1975)). Rather, certain individuals have the capacity to bring a claim on the estate's behalf. *Id.* Generally, "only the estate's personal representative has the capacity to bring a survival claim." *Id.* at 850–51 (noting that in certain circumstances, heirs may bring suit on behalf of the estate, such as when no administration is pending or necessary).

 In this case, it is undisputed that the Terks are the independent executors of their father's estate. Thus, they may bring a claim on behalf of the estate in their capacity as personal representatives. *Lovato,* 171 S.W.3d at 850; *see also* TEX. PROB. CODE § 3(aa) (definition of "personal representative" includes independent executor of an estate). We have previously held that a bankruptcy trustee can maintain a legal malpractice claim on behalf of a debtor's estate, and we see no reason to curtail a personal representative's similar malpractice claim on behalf of

---

**5.** We note that, while an injury occurred during the decedent's lifetime for purposes of determining survival, the statute of limitations for such a malpractice action does not begin to run until the claimant "discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of [the] cause of action." *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 121 (Tex.2001); *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988); *see also Little v. Smith,* 943 S.W.2d 414, 420 (Tex.1997) (statute of limitations for breach of fiduciary duty claim does not begin to run until claimant "knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act"). In this case, the "claimant" may be either the decedent or the personal representative of the decedent's estate.

a decedent's estate. *See Douglas v. Delp,* 987 S.W.2d 879, 882 (Tex.1999) (once party with legal malpractice claim declares bankruptcy, trustee of bankruptcy estate is only party with standing to pursue the claim). This holding is in accord with other jurisdictions, which have also recognized that, because the estate "stands in the shoes" of a decedent, it is in privity with the decedent's estate-planning attorney and, therefore, the estate's personal representative has the capacity to maintain the malpractice claim on the estate's behalf.[6]

## C

In holding for the Attorneys, the court of appeals noted that the policy concerns expressed in *Barcelo* concerning suits against estate planners by intended beneficiaries should also bar suits brought by personal representatives of an estate. 141 S.W.3d at 708. As noted above, in *Barcelo* we held that an attorney's ability to represent a client zealously would be compromised if the attorney knew that, after the client's death, he could be second-guessed by the client's disappointed heirs. 923 S.W.2d at 578. Accordingly, we held that estate-planning attorneys owe no professional duty to beneficiaries named in a trust or will. *Id.* at 578–79.

While this concern applies when disappointed heirs seek to dispute the size of their bequest or their omission from an estate plan, it does not apply when an estate's personal representative seeks to recover damages incurred by the estate itself. Cases brought by quarreling beneficiaries would require a court to decide how the decedent intended to apportion the estate, a near-impossible task given the limited, and often conflicting, evidence available to prove such intent. *See id.* at 578 (noting the problems associated with allowing extrinsic evidence to prove testator intent). In cases involving depletion of the decedent's estate due to negligent tax planning, however, the personal representative need not prove how the decedent intended to distribute the estate; rather, the representative need only demonstrate that the decedent intended to minimize tax liability for the estate as a whole.[7]

Additionally, while the interests of the decedent and a potential beneficiary may conflict, a decedent's interests should mirror those of his estate. Thus, the conflicts that concerned us in *Barcelo* are not present in malpractice suits brought on behalf of the estate. *See Nevin v. Union Trust Co.,* 726 A.2d 694, 701 (Me.1999) (holding that the better rule is to allow only personal representatives, not beneficiaries, to sue for estate-planning malpractice, because what may be good for one beneficiary is not necessarily good for the estate as a whole).

We note, however, that beneficiaries often act as the estate's personal representa-

---

**6.** *See Stanley L. & Carolyn M. Watkins Trust v. Lacosta,* 321 Mont. 432, 92 P.3d 620, 625 (2004) (citing *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,* 612 So.2d 1378, 1380 (1993)); *Hosfelt v. Miller,* No. 97–JE–50, 2000 WL 1741909, at *6, 2000 Ohio App. LEXIS 5506, at *17 (Ohio Ct.App. Nov. 22, 2000) (holding that a "legal malpractice claim arising from errors by an attorney in rendering estate-planning services is properly brought by the personal representative of the estate when excess estate taxes are paid by the estate in contravention of the decedent's intended estate plan"); *Sizemore,* 719 P.2d at 503 (administrator of estate in Oregon could sue estate-planning attorneys to recover costs incurred by the estate during litigation concerning a negligently-drafted will).

**7.** A testator may intentionally structure the estate in a way that does not minimize tax liability. Thus, courts should not presume that the testator intended to minimize tax liability; rather, it is the complaining party's burden to present evidence of this intent.

tive, and our holding today arguably presents an opportunity for some disappointed beneficiaries to recast a malpractice claim for their own "lost" inheritance, which would be barred by *Barcelo*, as a claim brought on behalf of the estate.[8] The temptation to bring such claims will likely be tempered, however, by the fact that a personal representative who mismanages the performance of his or her duties may be removed from the position. *See* TEX. PROB. CODE § 222(b)(4). Additionally, even assuming that a beneficiary serving as personal representative could prove, for example, that the deceased client intended to maximize the size of the entire estate by leaving a larger inheritance to the personal representative, he or she would not necessarily recover the lost inheritance should the malpractice claim succeed. Because the claim allowed under our holding today is for injuries suffered by the client's *estate*, any damages recovered would be paid to the estate and, only then, distributed in accordance with the decedent's existing estate plan. *See Russell*, 841 S.W.2d at 345 (recovery in survival action flows to those who would have received it had it been part of decedent's estate immediately prior to death). Thus, the recovery would flow to the disappointed beneficiary only if the estate plan had provided for such a distribution, fulfilling the decedent's wishes. These factors prevent personal representatives who are also beneficiaries from using our holding today as an end run around *Barcelo*.

Since our decision in *Barcelo*, we have allowed non-clients to maintain negligent misrepresentation suits against attorneys despite a lack of privity. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.1999) (party who entered into settlement agreement with lender, which could not be enforced after lender was declared insolvent, could bring suit against lender's attorneys for representing that agreement would be enforceable). In doing so, we noted that the policy concerns expressed in *Barcelo* did not apply in the negligent misrepresentation context. *Id.* at 793. Such suits arise only in situations where an attorney has determined that communication with the third party is compatible with the attorney-client relationship and the attorney receives consent from the client to communicate with the non-client. *Id.* Thus, we held that allowing the third party to bring a negligent misrepresentation claim would not cause the client to "lose control over the attorney-client relationship," a concern we expressed in *Barcelo*. *Id.* Additionally, we found that allowing negligent misrepresentation claims by non-clients would not subject attorneys to "almost unlimited liability," because liability was limited to those situations in which the attorney provided information to a third party with the knowledge that the third party intended to rely on it. *Id.* at 794.

These principles apply here. Limiting estate-planning malpractice suits to those brought on behalf of a client's estate by a personal representative will prevent the client from "losing control of the attorney-client relationship," because the interests of the estate—which merely "stands in the

---

8. For example, a spouse that is both a beneficiary and personal representative may argue that, if the estate-planning attorney had not committed malpractice, the spouse would have received a larger inheritance and the decedent's estate would have suffered a lower tax burden, because the estate could have taken better advantage of the unlimited marital tax deduction. Under our holding today, a personal representative could maintain such a claim only if the representative established that the estate-planning attorney negligently failed to structure the estate in accordance with the testator's wishes, and the estate incurred damages as a result.

shoes" of the client after death—are compatible with the client's interests. Additionally, limiting the class of potential estate-planning malpractice claimants to the personal representatives of a client's estate will ensure that estate-planning attorneys are not subject to "almost unlimited liability."

Finally, we note that precluding both beneficiaries and personal representatives from bringing suit for estate-planning malpractice would essentially immunize estate-planning attorneys from liability for breaching their duty to their clients. As the *Barcelo* dissent noted, however, allowing estate-planning malpractice suits may help "provide accountability and thus an incentive for lawyers to use greater care in estate planning." 923 S.W.2d at 580 (Cornyn, J., dissenting). Limiting estate-planning malpractice suits to those brought by either the client or the client's personal representative strikes the appropriate balance between providing accountability for attorney negligence and protecting the sanctity of the attorney-client relationship.

## III

### Conclusion

The Terks—in their capacity as personal representatives of their father's estate—may maintain an estate-planning malpractice claim against the Attorneys. We therefore reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion. TEX. R. APP. P. 60.2(d).

Justice GREEN did not participate in the decision.