**Thomas O'DONNELL, As Executor of the Estate of Corwin D. Denney, Appellant,**

v.

**Paul H. SMITH, Jack Guenther, Cox, Smith & Smith, et al., Appellees.**

No. 04–04–00108–CV.

Court of Appeals of Texas, San Antonio.

July 25, 2007.

Brett Wagner, Mark W. Long, Larry J. Doherty, Doherty Long Wagner, L.L.P., Houston, Vincent L. Marable, III, Paul Webb, P.C., Wharton, for appellant.

R. Paige Arnette, Casey L. Dobson, Scott Douglass & McConnico, L.L.P., Austin, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Thomas O'Donnell, as executor of the estate of Corwin D. Denney, appeals from a summary judgment granted in favor of the law firm and attorneys who provided legal advice to Denney during his lifetime in his capacity as executor of his wife's estate. This is the second time we have been asked to decide this case. On the first occasion, we affirmed the judgment of the trial court. We held, based on the summary judgment evidence, that O'Donnell could not recover on behalf of Denney's estate because no cause of action for legal malpractice accrued during Denney's lifetime; therefore, O'Donnell in his representative capacity lacked privity of contract with the attorneys and the law firm he was attempting to sue. *See O'Donnell v. Smith*, No. 04–04–00108–CV, 2004 WL 2877330 (Tex.App.-San Antonio Dec.15, 2004), *rev'd*, 197 S.W.3d 394 (Tex.2006) (per curiam). On review, the Supreme Court vacated our judgment and remanded the case to this court for reconsideration in light of its recent holding in *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780 (Tex.2006), that a personal representative of an estate steps into the shoes of the decedent and may sue the decedent's lawyers for estate-planning legal malpractice. After considering the issues on remand in light of *Belt*, we affirm the granting of summary judgment in part, reverse the granting of summary judgment in part, and remand the cause to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1959, Corwin Denney married Des Cygne Gilcrease in California. Both had been married previously and owned interests in certain companies as separate property before their marriage: Denney in Automation Industries, Inc.; and Gilcrease in Gilcrease Oil Company. They had orally agreed before marriage that all acquisitions of stock in Automation Industries by Denney during their marriage would remain his separate property and all acquisitions in Gilcrease Oil by Gilcrease during their marriage would remain her separate property. Denney had three daughters from a previous marriage and Gilcrease had two sons, whom Denney adopted in 1961; Denney and Gilcrease also adopted a daughter together, Deci, in 1961. In 1962, Gilcrease created a will which devised one half of her estate to Denney and provided the remainder was to be placed in trust for the benefit of their six children. The trust income went to Denney until his death and then the children were to receive the residuary of the remaining trust assets in equal amounts. The family subsequently moved to San Antonio, Texas. Thereafter, Denney acquired the Gilcrease Oil interests from Gilcrease and other third parties, and also purchased additional shares of Automation Industries stock.

In 1968, Gilcrease was killed in an automobile accident. Denney subsequently retained Paul H. Smith, Jack Guenther, and Cox & Smith, Inc. (collectively, "Cox &

Smith")[1] to advise him in connection with the independent administration of Gilcrease's estate. A report that had previously been prepared by Denney's California accountant noted that Denney and Gilcrease had commingled their separate and community assets, and had not entered into any written agreements characterizing their properties as separate or community. This information was forwarded to Cox & Smith, who also performed further legal research in an attempt to determine the proper characterization of the Gilcrease Oil interests and Automation stock. A memo written by Cox & Smith associate Joe Smyer stated that both interests were presumed to be community, but concluded that additional information was necessary before attempting to classify the assets in question as Denney's separate property.

In June 1969, Cox & Smith filed a Federal Estate Tax Return on behalf of Denney as executor of Gilcrease's estate, which included an inventory of Gilcrease's property at the time of her death. The tax return and schedule did not list the Gilcrease Oil interests or the Automation stock as property owned by Gilcrease at her death. The information in this tax return and the characterization of Gilcrease's separate and community property interests then formed the basis on which Denney funded his wife's testamentary trust. Denney died approximately 29 years later in April 1999. About a month after their father's death, the Denney children[2] sued Denney's estate for approximately $25 million, claiming they had suffered damages as a result of the Gilcrease trust being underfunded due to a mischaracterization of separate and community property assets. Specifically, they claimed that Denney wrongly held Gilcrease's community interest in Automation stock and Gilcrease Oil for over 30 years, causing the trust to be underfunded by $1,845,622.[3] After mediation, O'Donnell, as executor of Denney's estate, settled the children's claims for approximately $12.9 million.[4] O'Donnell then brought suit against Cox & Smith, alleging that the negligence of Cox & Smith during its representation of Denney from approximately 1968 to 1970 constituted legal malpractice that resulted in the estate having to settle the claims of the beneficiaries.[5] Cox & Smith sought summary judgment asserting multiple traditional and no-evidence grounds.[6] The trial

1. The complete list of named defendants includes Paul H. Smith; Jack Guenther; Cox, Smith & Smith; Cox, Smith, Smith, Hale & Guenther; Cox, Smith, Smith, Hale & Guenther, Inc.; and Cox & Smith, Inc. In the interest of brevity, we refer to the appellees collectively as "Cox & Smith."

2. Deci Denney did not originally sue her father's estate, but eventually filed a claim and settled for $1.38 million after the other children had settled their claims.

3. The suit against the estate also alleged that Denney breached his fiduciary duty as trustee by borrowing $100,000 from Gilcrease's trust. In 1972, Denney borrowed $100,000 from Gilcrease's trust and loaned it to Denney International (a company he and others, including his brother, Duane Denney, had formed) to purchase an interest in the Beverly Wil-

shire Hotel. In 1982, Denney International repaid the loan with interest.

4. The actual total settlement, including costs, was $15,227,074; however, because $1,845,622 was not funded to Gilcrease's trust and Denney presumably had the use of that money during his lifetime, O'Donnell is now claiming damages in the amount of $13,381,452.

5. In his fourth amended petition, O'Donnell claimed that Cox & Smith committed negligence, gross negligence/malice, and breach of fiduciary duty, and alleged the right to recover actual damages, forfeiture of fees paid by Denney to Cox & Smith, punitive damages, and attorneys' fees.

6. The no-evidence motion for summary judgment asserted the following grounds: (1) no

court granted summary judgment without stating the basis. O'Donnell appeals.

## STANDARD OF REVIEW

We review both a no-evidence and a traditional motion for summary judgment *de novo. Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156 (Tex.2004). We will uphold a traditional summary judgment only if the movant has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground expressly set forth in the motion. TEX.R. CIV. P. 166a(c); *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997); *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether the summary judgment record establishes the absence of a disputed material fact, we view as true all evidence favorable to the non-movant and indulge every reasonable inference in favor of the non-movant. *Nixon,* 690 S.W.2d at 548–49.

When reviewing a no-evidence motion for summary judgment, we review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005); *Reynosa v. Huff,* 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.) (citing *Moore v. K*

*Mart Corp.,* 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied)). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment cannot properly be granted. *Reynosa,* 21 S.W.3d at 512. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Id.* (internal citations omitted).

When summary judgment is sought on multiple grounds and the trial court's order does not indicate the basis for its ruling, we will affirm the summary judgment if any theory advanced by the movant is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Villanueva v. Gonzalez,* 123 S.W.3d 461, 464 (Tex.App.-San Antonio 2003, no pet.).

## DISCUSSION

In our initial opinion, relying on *Barcelo v. Elliott,* 923 S.W.2d 575 (Tex.1996), and on our own holding in *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.,* 141 S.W.3d 706 (Tex.App.-San Antonio 2004), *rev'd,* 192 S.W.3d 780 (Tex.2006), we held the summary judgment evidence established that Denney did not suffer a legal injury during his lifetime.[7] *See O'Donnell,*

---

evidence of proximate causation; (2) no evidence of damages; (3) no evidence of the objective and subjective prongs of the malice standard; and (4) with respect to the breach of fiduciary duty claim, no evidence of an improper benefit obtained by Cox & Smith in representing Denney. The traditional motion for summary judgment asserted the following grounds: (1) lack of privity; (2) no legal injury or damage during Denney's lifetime; (3) improper fracturing of the legal malpractice claim; (4) lack of proximate causation; (5) lack of actual damages; (6) no basis for re-

covery of attorneys' fees; and (7) all claims against Cox & Smith are barred by the doctrine of quasi-estoppel.

**7.** We concluded the summary judgment evidence showed that "... during his lifetime, Mr. Denney did not know of any claimed wrongful act by Cox & Smith, did not have notice of or anticipate the subsequent claims by the beneficiaries of his wife's estate, and did not suffer an economic loss as a result of Cox & Smith's representation." *O'Donnell,* 2004 WL 2877330, at *2.

2004 WL 2877330, at *3. Accordingly, we affirmed the trial court's summary judgment on the basis that because no cause of action had accrued to Denney during his lifetime, the personal representative of his estate lacked privity of contract with the lawyers and the law firm he was attempting to sue. *Id.* Since privity was lacking based on the element of accrual, we never reached the issue of whether a cause of action could survive Denney's death and be prosecuted by the representative of his estate. *See id.*

## A. The Supreme Court's Opinion in Belt

After we issued our initial opinion, the Supreme Court considered, for the first time, whether a legal malpractice claim in the estate-planning context can survive a deceased client. *See Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.,* 192 S.W.3d 780 (Tex.2006). In *Belt,* the independent executrixes of their father's estate brought a legal malpractice action against the attorneys who had prepared their father's will. The executrixes claimed the estate incurred increased tax liability that could have been avoided by competent estate planning. The trial court granted a summary judgment in favor of the law firm on "no duty" grounds, which this court affirmed. *Belt,* 141 S.W.3d at 706. A unanimous Supreme Court reversed our opinion, holding that "there is no legal bar preventing an estate's personal representative from maintaining a legal malpractice claim on behalf of the estate against the decedent's estate planners." *Belt,* 192 S.W.3d at 782. So long as the personal representative seeks recovery for pure economic loss, he may maintain an action for alleged negligence that occurred during the de-

ceased client's lifetime. *Id.* at 785–86. "[B]ecause the estate 'stands in the shoes' of a decedent, it is in privity with the decedent's estate-planning attorney and, therefore, the estate's personal representative has the capacity to maintain the malpractice claim on the estate's behalf." *Id.* at 787. The *Belt* court further addressed the issue of when legal malpractice claims accrue for purposes of determining whether injury occurred while the decedent was alive. The court held that "[e]ven though an estate may suffer significant damages **after** a client's death, this does not preclude survival of an estate-planning malpractice claim." *Id.* at 785–86 (disapproving *Estate of Arlitt v. Paterson,* 995 S.W.2d 713 (Tex.App.-San Antonio 1999, pet. denied)). (emphasis added).

O'Donnell argues *Belt* controls our disposition of the instant case, at least on the issue of privity. Specifically, O'Donnell maintains that all causes of action that form the basis of this suit accrued during Denney's lifetime and survive his death. Accordingly, he asserts that, as the personal representative of Denney's estate, he may maintain a legal malpractice action against Denney's attorneys for economic losses to the estate. Thus, O'Donnell claims the trial court erred in granting summary judgment for Cox & Smith on the issue of privity.

■ In response, Cox & Smith contends *Belt* did not abolish the long-standing privity rule that only a client has the requisite privity to sue a lawyer for legal malpractice, but instead narrowly relaxed the privity barrier to allow suits by personal representatives for estate-planning malpractice.[8] Because the claims in the in-

---

8. Cox & Smith asserts that the Court in *Belt* "again and again" limited its holding to estate-planning malpractice claims. *See, e.g., Belt,* 192 S.W.3d at 782 (holding that "there

is no legal bar preventing an estate's personal representative from maintaining a legal malpractice claim on behalf of the estate against the decedent's estate planners"); *at* 784

stant case do not arise out of estate-planning advice,[9] Cox & Smith maintains that even after *Belt*, the privity rule bars this suit and the trial court's summary judgment should be affirmed. For the reasons discussed below, we disagree that *Belt* is limited to instances of estate-planning malpractice and hold that it applies to the instant case.

### Actions for Damage to Property Survive Death

In *Belt*, a unanimous Supreme Court considered for the first time "whether a legal malpractice claim in the estate-planning context survives a deceased client." *Belt*, 192 S.W.3d at 784. The *Belt* court began its analysis by noting that at common law actions for "damage to real or personal property survive the death of the owner." *Id.* (citing *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 34 (Tex.1963)). The Court then examined the nature of the estate-planning malpractice claim before it and ultimately held:

> Therefore, in accordance with the long-standing, common-law principle that actions for damage to property survive the death of the injured party, we hold that **legal malpractice claims alleging pure economic loss survive in favor of a deceased client's estate,** because such claims are necessarily limited to recovery for property damage.

("[w]e have never specifically considered whether a legal malpractice claim in the estate-planning context survives a deceased client"); *at* 785 ("[w]e disapprove *Estate of Arlitt's* holding that no legal malpractice claim accrues before death when an estate-planning attorney's negligent drafting results in increased estate tax consequences"); *at* 787 (noting that other jurisdictions agree that the estate "is in privity with the decedent's estate-planning attorney"); *at* 789 (holding that personal representatives of the estate "may maintain an estate-planning malpractice claim against the [a]ttorneys"); *at* 789

*Id.* at 785 (emphasis added). The Court supported its holding by noting that "[a] number of other jurisdictions have allowed legal malpractice claims to survive a decedent," and cited to five out-of-state decisions. *Id.* at 785 n. 3. None of these five decisions cited by the Supreme Court are estate-planning legal malpractice cases. *See id.* In further support of its holding that "legal malpractice claims alleging pure economic loss survive in favor of a deceased client's estate," the Supreme Court also cited with approval the Fort Worth Court of Appeals' decision in *Traver v. State Farm Mut. Auto. Ins. Co.*, 930 S.W.2d 862, 871 (Tex.App.-Fort Worth 1996), *rev'd on other grounds*, 980 S.W.2d 625 (Tex.1998) ("legal malpractice claim arising from representation in personal injury case survives death of client"). *Belt*, 192 S.W.3d at 785. Accordingly, as noted above, in concluding that the legal malpractice claims in *Belt* survived the death of the client, the Supreme Court relied upon the general legal principle—not limited to the estate planning context—that actions for damage to property survive the death of the injured party. *Id.*

### Barcelo Policy Considerations Behind Privity Rule

In further support of its position that the privity rule continues to bar suits by non-clients outside the estate-planning context, Cox & Smith notes that the *Belt*

(noting that "[l]imiting estate-planning malpractice suits to those brought by either the client or the client's personal representative strikes the appropriate balance between providing accountability for attorney negligence and protecting the sanctity of the attorney-client relationship").

9. Cox & Smith argues that this is not an estate-planning malpractice case because it advised Denney with respect to his wife's estate, not his own estate.

court was careful not to overturn the long-standing privity rule discussed in *Barcelo*. *See Barcelo*, 923 S.W.2d at 577–78. Specifically, the *Belt* court reaffirmed the policy considerations behind the privity rule, including concerns about an attorney's ability to zealously represent his or her client without divided loyalties. *Belt*, 192 S.W.3d at 787 (citing *Barcelo*, 923 S.W.2d at 578–79). Here, Cox & Smith argues O'Donnell's suit entails "second-guessing" Denney's own lifetime decisions. They point to summary judgment evidence that Cox & Smith advised Denney more than thirty years ago regarding the Automation stock classification issue, and that Denney considered that advice but ultimately made the final decision to classify the stock as his own separate property. Now, O'Donnell is suing Cox & Smith because it did not act *contrary* to the desires of its own client. Accordingly, because O'Donnell's interests in this suit are not "compatible" with Denney's interests, or at least his position during his lifetime, Cox & Smith argues that the policy considerations supporting the *Barcelo* privity bar should apply to this suit and the summary judgment should be affirmed. This argument fails for several reasons.

■ First, Cox & Smith's argument that O'Donnell's suit entails "second-guessing" is based exclusively on Cox & Smith's view of the evidence. Reviewing the summary judgment evidence in favor of the non-movant as we must, there appears to be a fact issue as to whether Denney would have followed the advice of his attorneys. Guenther's deposition reveals several relevant facts. Cox & Smith's research did *not answer the question of proper* characterization of the property, but "it just raised a number of additional questions to be answered." Guenther did not advise Denney that he thought Denney's characterization of Automation stock as separate

property was incorrect, but just met with Joe Smyer and Denney, and went over Smyer's memo and answered questions. Denney then said he would "get with" his California attorneys and accountant. Guenther informed Denney that he should "probably" get a declaratory judgment to determine separate verus community property, but Denney said he did not care to go to court. After Denney informed Guenther that he had decided that [the stock] was his separate property, the subject of a declaratory judgment action was never discussed again. Furthermore, the summary judgment record contains the deposition of Paul Smith who admitted he did "not recall any instance where [Denney] ignored [legal] advice." Therefore, there is some evidence in this record that Denney would have heeded the advice of his attorneys had Cox & Smith advised Denney that the disputed assets should not have been excluded from his wife's estate.

Second, although we agree the *Belt* opinion did not overrule *Barcelo*, we also believe that in *Belt* the Supreme Court foreclosed a *Barcelo* analysis for suits brought by personal representatives on behalf of an estate. *See Belt*, 192 S.W.3d at 787. As discussed by the Court in *Belt*:

> As noted above, in *Barcelo* we held that an attorney's ability to represent a client zealously would be compromised if the attorney knew that, after the client's death, he could be second-guessed by the client's disappointed heirs. Accordingly, we held that estate-planning attorneys owe no professional duty to beneficiaries named in a trust or will. While this concern applies when disappointed heirs seek to dispute the size of their bequest or their omission from an estate plan, it does not apply when an estate's personal representative seeks to recover damages incurred by the estate itself.

*Id.* (citations omitted). Like *Belt,* the instant suit does not involve disappointed heirs or quarreling beneficiaries seeking to impose liability against a law firm that never represented them. Instead, as the personal representative, O'Donnell simply seeks to stand in Denney's shoes in order to prosecute Denney's legal malpractice suit against Denney's own attorneys. *See id.* at 788–89 ("... the interests of the estate—which merely 'stands in the shoes' of the client after death—are compatible with the client's interests"). Nor do we have *Barcelo* issues concerning how Denney may have "intended" to apportion his estate. O'Donnell, as representative of Denney's estate, is seeking damages suffered *by* Denney's *estate,* purportedly as a result of the legal advice given to Denney by Cox & Smith. *Id.* at 788 ("[b]ecause the claim allowed under our holding today is for injuries suffered by the client's *estate,* any damages recovered would be paid to the estate and, only then, distributed in accordance with the decedent's existing estate plan"). Finally, we do not have the concern that by allowing a personal representative to bring suit on behalf of the estate, the attorneys would be subject to "almost unlimited liability." As noted by the Court in *Belt,* "while the interests of the decedent and a potential beneficiary may conflict, a decedent's interests should mirror those of his estate." *Id.* at 787. Here, the only claimant is the personal representative of the client's estate; as such, the suit should mirror the malpractice action that Denney could have brought during his lifetime.

In summary, nothing in *Belt* compels us to conclude the Supreme Court intended to disallow a personal representative from bringing other types of malpractice claims on behalf of the estate. Accordingly, we conclude that *Belt* applies to the summary judgment record before us.

## B. Summary Judgment

### Belt's Application to this Case on the Issue of Privity

We next examine the summary judgment record on the issue of privity in light of the holding in *Belt.* O'Donnell maintains that privity exists because the estate is merely prosecuting an actionable wrong which Denney suffered before his death. As we noted in our first opinion, "[t]his argument necessarily includes two premises: (1) a cause of action for legal malpractice accrued to [Mr.] Denney during his lifetime; and (2) such a cause of action would survive [Mr.] Denney's death and could be properly prosecuted by the representatives of his estate." *See O'Donnell,* 2004 WL 2877330, at *2. Applying *Belt* to the summary judgment record before us, we agree with O'Donnell that a fact issue exists as to privity, thereby precluding summary judgment in favor of Cox & Smith.

### 1. Accrual

�justify Cox & Smith's initial summary judgment argument was that all of O'Donnell's claims are barred because Denney suffered no legal injury or damages during his lifetime; rather, the claimed injuries were incurred by Denney's estate (not Denney) after his death when the beneficiaries of his wife's trust sued and Denney's estate settled the claims for $12.9 million. Based on the Supreme Court's holding in *Belt,* Cox & Smith's argument must fail. The Court expressly noted in *Belt* that a cause of action may accrue at the time the negligence occurred even if the client is unaware of the cause of action and even if damages are not fully quantified or recognized until a later date. *Belt,* 192 S.W.3d at 786. Specifically, the Supreme Court stated:

Even though an estate may suffer significant damages **after** a client's death, this does not preclude survival of an estate-planning malpractice claim. While the primary damages at issue here—increased tax liability—did not occur until after the decedent's death, the lawyer's alleged negligence occurred while the decedent was alive. *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 120 (Tex.2001) (legal malpractice claim accrues 'when facts have come into existence that authorize a claimant to seek a judicial remedy'). If the decedent had discovered this injury prior to his death, he could have brought suit against his estate planners to recover the fees paid to them.

*Id.* (emphasis added; citation omitted). The Court further noted that there is a distinction between accrual of the legal malpractice cause of action and discovery of the facts establishing such cause of action for purposes of the statute of limitations. *Id.* at 786 n. 5. An injury can occur during the client's lifetime which permits survivability of a legal malpractice claim, and discovery of the necessary facts underlying the claim can occur after the client's death. *Id.* at 786.

Here, viewing the summary judgment evidence in favor of the non-movant as we must, there appears to be a fact issue as to whether Cox & Smith's legal advice relating to characterization of the two disputed assets led to the subsequent exclusion of property from Gilcrease's estate which in turn led to under-funding of the trust. Such under-funding created a risk of harm to Denney's interests during his lifetime, which risk was later realized and quantified when the trust beneficiaries sued Den-

ney, via his estate after his death, and a settlement was made. Cox & Smith does not dispute that if Denney had discovered the claimed "bad advice" while alive, he could have maintained a legal malpractice action.[10] Accordingly, we conclude that there exists summary judgment evidence that a malpractice cause of action did accrue during Denney's lifetime. Specifically, under this summary judgment record, facts came into existence during Denney's lifetime which caused a legal injury and authorized him to seek a judicial remedy. *See id.*

### 2. *Survival*

■ As noted earlier, the first question the Supreme Court resolved in *Belt* was whether or not the legal malpractice claim survived the client's death such that the personal representative of the deceased client's estate had the capacity to assert the malpractice action. *Id.* at 784 ("[t]herefore, if the Terks' legal malpractice claim is brought on behalf of the decedent's estate and survives the decedent, the Terks may maintain a suit against the Attorneys"). The Supreme Court stated the general common law rule in Texas that, absent a statute providing to the contrary, a cause of action that is penal or personal in nature typically does not survive, while claims that are contractual in nature or affect property rights do survive the death of either party. *Id.* O'Donnell argues that, like the malpractice claim asserted in *Belt*, his suit seeks purely economic loss for the depletion of Denney's estate. We agree. Legal malpractice claims alleging pure economic loss survive in favor of the deceased client's estate. *Id.* at 785. Because the summary judgment record reveals a fact issue on both accrual

---

10. No ground was set forth by Cox & Smith in either its traditional or no-evidence motion for summary judgment asserting that the legal advice given to Denney met the applicable standard of care. Therefore, for purposes of our analysis, we assume that Cox & Smith owed a duty to Denney, and breached its duty to Denney.

and survival, summary judgment in favor of Cox & Smith on the issue of privity would be improper. As personal representative of the estate, O'Donnell "stands in the shoes" of Denney; therefore, O'Donnell is in privity with Cox & Smith and may maintain suit for legal malpractice.

We must next review the record to determine whether summary judgment was proper on any other theory raised by Cox & Smith. O'Donnell sued Cox & Smith for negligence (legal malpractice), gross negligence/malice, and breach of fiduciary duty. We turn first to O'Donnell's claims for breach of fiduciary duty and malice, and then to the challenged elements of his claim for legal malpractice.

### Breach of Fiduciary Duty

▮▮▮ In both its traditional and no-evidence motions for summary judgment, Cox & Smith argued that legal malpractice claims cannot be "fractured" to contrive a separate breach of fiduciary duty claim. We agree. Texas law does not permit a plaintiff to fracture legal malpractice claims into separate claims. *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex.App.-San Antonio 2003, pet. denied); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The focus of a breach of fiduciary duty claim is whether an attorney obtained an improper benefit from representing a client, while a legal malpractice claim asks whether an attorney adequately represented a client. *Aiken*, 115 S.W.3d at 28; *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied). Breach of fiduciary duty often involves the attorney's failure to disclose conflicts of interest, failure to deliver client funds, improper use of client confidences, or engaging in self-dealing, while a legal malpractice claim is

based on negligence and arises from an attorney giving bad advice or otherwise improperly representing the client. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989) (legal malpractice claim arises from attorney's failure to exercise ordinary care); *Aiken*, 115 S.W.3d at 28.

In support of his breach of fiduciary duty claim, O'Donnell contends that Cox & Smith failed to "exercise the highest degree of care, good faith, and honest dealing." Without more, these allegations fail to support a separate cause of action for breach of fiduciary duty. *See Aiken*, 115 S.W.3d at 28–29; *see also Kimleco*, 91 S.W.3d at 923 (the essence of a breach of fiduciary duty involves the "integrity and fidelity" of an attorney and occurs when the attorney obtained an improper benefit from his representation of the client); *see also Goffney v. Rabson*, 56 S.W.3d 186, 193–94 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (where attorney's misrepresentation is "no more than a claim for legal malpractice," there is no separate claim for breach of fiduciary duty); *Greathouse*, 982 S.W.2d at 172 (crux of breach of fiduciary duty claim was that attorney did not provide adequate legal representation, which was a malpractice claim). Because O'Donnell failed to present any evidence that Cox & Smith breached its fiduciary duty to Denney, separate and apart from his legal malpractice claim, the trial court's grant of summary judgment on O'Donnell's claim for breach of fiduciary duty was proper.

### Malice

Cox & Smith also moved for summary judgment on the basis that O'Donnell failed to present evidence that it acted with gross negligence or malice in its representation of Denney.[11] O'Donnell was

---

11. In the trial court and on appeal, O'Donnell uses both "malice" and "gross negligence."

In 2003, the legislature amended sections 41.001 and 41.003 of the Texas Civil Practice

entitled to an award of exemplary damages if he proved by clear and convincing evidence that the harm suffered by Denney's estate resulted from malice. *See* Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 110 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (Vernon Supp. 2006)). "Malice" was defined in the former version of section 41.001(7), applicable here, as: "(A) a specific intent by the defendant to cause substantial injury to the claimant; or (B) an act or omission: (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *See* Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 109 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7), (11) (Vernon Supp.2006)).

 Malice differs from ordinary negligence in that it requires extreme risk and a conscious indifference to that risk. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex.1994). Malice consists of both an objective and a subjective prong. Objectively, the defendant's conduct must involve an extreme risk of harm. *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 447 n. 14 (Tex.App.-Texarkana 2006, no pet.). Subjectively, the defendant must have had "actual awareness" of the extreme risk created by the conduct. *Moriel*, 879 S.W.2d at 22; *Justiss*, 202 S.W.3d at 447.

 With regard to the first prong, O'Donnell contends that at the time Cox & Smith's acts or omissions occurred, there was a recognizable, extreme risk of harm to Denney by virtue of the mischaracterization of the Automation stock and Gilcrease Oil interests. In support, O'Donnell cites to affidavit and deposition testimony by his expert, Oliver Guiberteau, and the estate's California counsel, Jack Ruskey, which includes the conclusory statement that "a reasonably prudent lawyer should have recognized the extreme degree of risk resulting from improper characterization of the community and separate assets." As to the second prong, O'Donnell argues that both Paul Smith and Jack Guenther "subjectively" recognized the risk involved and the importance of the property characterization. As evidence, O'Donnell cites to Guenther's deposition testimony that he did not recall advising Denney to have somebody review the tracing work done by Denney's California accountant to ensure it was accurate under Texas law. O'Donnell claims that Guenther's failure to review the tracing analysis indicates that Cox & Smith was indifferent to the risk facing Denney.

Based on the summary judgment record before us, we conclude that O'Donnell failed to bring forth more than a scintilla

---

and Remedies Code, creating a separate section defining "gross negligence," which in the former version was included as an alternate definition of "malice," and establishing gross negligence as a separate basis for exemplary damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7), (11), § 41.003(a)(3) (Vernon Supp.2006). Because this action was filed before the effective date of the 2003 amendments, the former versions of sections 41.001

and 41.003 apply to this case. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899. We note, however, that the current definition of "gross negligence" mirrors the alternate definition of "malice" contained in subsection (B) of former Section 41.001(7). *See Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 447 n. 14 (Tex.App.-Texarkana 2006, no pet.).

of evidence to show that Cox & Smith acted with malice. Although it did not reach a firm conclusion on whether to characterize the assets as community or separate, the evidence shows that Cox & Smith did recognize the importance of the characterization issue, conducted its own independent research, and advised Denney it was "presumably community" and that further information was needed to determine whether it could be characterized as separate property. Additionally, Guenther testified by deposition that he advised Denney that he should "probably" bring a declaratory judgment action in a Texas probate court to verify the property's status as separate property. Cox & Smith further presented evidence showing that Denney believed his oral agreement with Gilcrease to keep the property separate was sufficient. O'Donnell did not present any evidence showing that Cox & Smith specifically intended to cause Denney substantial injury, or that it had actual awareness of the extreme risk involved and proceeded with conscious indifference. Therefore, summary judgment was properly granted on O'Donnell's claim for malice.

### Legal Malpractice—Causation

 In both its motions, Cox & Smith argued that it was entitled to summary judgment because O'Donnell failed to present evidence that Cox & Smith's negligent conduct caused the damage to Denney's estate. In a legal malpractice claim, the plaintiff must demonstrate that "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the

breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Belt,* 192 S.W.3d at 783 (citing *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995)). To prove causation, the legal malpractice plaintiff must "establish a direct causal link between the damages awarded, the actions of the defendant, and the injury suffered." *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 181 (Tex. 1995). O'Donnell argues that Cox & Smith's conduct caused the mischaracterization of the Automation stock and Gilcrease Oil interests as separate property, which, in turn, caused Denney to underfund Gilcrease's testamentary trust, which led to the trust beneficiaries' claim that Denney breached his fiduciary duty and the subsequent settlement of the claim by his estate.[12] Cox & Smith responds that O'Donnell's causation theory fails for two reasons: (1) the entire settlement amount could have been attributable to the $100,000 loan to Denney International; and (2) the settlement with Deci Denney was a "set up" because the estate "invited" her to bring her claim and agreed to settle the claim before it was filed.

 To establish causation, O'Donnell relies primarily on the deposition testimony of Paul Smith, who stated that Denney consistently followed the legal advice of his counsel:

Q: In your dealings with Corwin Denney, both before Des Cygne's death and then through the period of the administration of her estate and through subsequent work for Corwin, did you ever find that Corwin,

---

**12.** The claims by the Denney children against Denney's estate included the following: Denney breached his fiduciary duty as executor of Gilcrease's estate by treating all of the Automation Industries stock as his separate property and by not including Gilcrease's community interest in her estate; Denney breached his fiduciary duty as executor of Gilcrease's estate by failing to establish a depletion reserve from the oil and gas properties placed into Gilcrease's trust; and Denney breached his fiduciary duty as trustee of Gilcrease's trust by borrowing $100,000 from Gilcrease's trust in the 1970s for Denney International to purchase a significant interest in the Beverly Wilshire Hotel.

in using Cox & Smith as his attorneys, [did] things contrary to the legal advice given to him by your firm?

A: I know of no such instance.

Q: Was your experience in dealing with Corwin Denney such that he was the type of client who relied upon and acted upon advice given to him by his lawyers?

A: In my dealings with him, yes.

Q: I was trying to make a distinction with the question. We've all experienced having clients who asked for a legal opinion or advice, and when you give it to them, they don't like it, and they just ignore it and go off and do what they want, and so that was the context of the prior question. And was that your understanding of the context of the question about Corwin following advice?

A: I do not recall any instance where he ignored advice.[13]

This testimony constitutes more than a scintilla of evidence that Denney would have followed the advice of his attorneys and characterized the Automation stock and Gilcrease Oil interests as community property had he been advised to do so, and thus raises a fact issue on the element of causation.[14] Therefore, granting the no-evidence summary judgment on this issue was improper.

In its traditional summary judgment motion, Cox & Smith argued that because it never advised Denney with respect to the $100,000 loan, and because all of the $12.9 million settlement can be attributed to this loan, there is no material fact issue as to whether it proximately caused the damage to Denney's estate.[15] O'Donnell responds that the $100,000 loan was inconsequential in comparison to the substantial damages that resulted from the improper characterization of the Automation stock and Gilcrease Oil interests. In support, he cites the testimony of the lawyer who represented Denney's estate in the litigation filed by the Denney children; the attorney stated that the allegation concerning the $100,000 loan had only "nuisance value" and was not the "big claim" concerning breaches of trust by Denney or his estate which resulted in having to pay "mammoth damages to the claimants." Accordingly, the harm to Denney's estate, if any, caused by the $100,000 loan raises a fact issue, and cannot be decided as a matter of law in a summary judgment context. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999) (on appeal, summary judgment movant still bears burden of showing there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law).

Likewise, Cox & Smith has not proved its entitlement to summary judgment on causation based on the settlement with Deci being an alleged "set up" simply because she originally refused to sue her father's estate. O'Donnell presented evi-

---

**13.** This deposition took place on January 11, 2000 in connection with the lawsuit filed by the Denney children against Denney's estate.

**14.** Smith later testified that Denney did not follow his advice on one occasion, and referenced a 1986 letter written by Denney to Gene Ames of Venus Oil. This letter is not in the record, and Cox & Smith does not refer to it on appeal as evidence that Denney refused to follow its advice.

**15.** O'Donnell testified that the settlement proceeds were not allocated between the claims arising out of Denney's actions as executor of the estate and the claims arising out of Denney's actions as trustee of the trust. O'Donnell testified that it was possible that the damages arising from the Beverly Wilshire transaction could have accounted for almost the entire settlement amount.

dence that Deci's settlement was required before the California court would approve the other beneficiaries' settlement, and that Deci decided to file a claim only after consulting with her attorney and with her husband. Therefore, Cox & Smith has not shown that it is entitled to summary judgment on this issue as a matter of law. *Id.* Based on the foregoing reasons, the entry of summary judgment on causation as an element of O'Donnell's legal malpractice claim was improper.

### Legal Malpractice—Damages

■ In his petition, O'Donnell claimed that Denney's estate had incurred $13,381,452 in damages as a result of Cox & Smith's negligence: $15,227,074 for the settlement and costs, minus the $1,845,622 which was not funded to Gilcrease's trust and presumably used by Denney during his lifetime. O'Donnell also contends that Denney's estate was damaged by having to pay attorneys' fees to defend against the claims asserted by the trust beneficiaries. In support of these claims, O'Donnell relies primarily on the affidavit of Charles Gerhardt, a certified public accountant. After preparing a damage model, Gerhardt concluded that Denney's estate suffered a loss of $13,381,452. Gerhardt calculated this figure by subtracting the "value paid" from the "value received." The "value received" is represented by the amount of money Denney had the use and benefit of during the remainder of his life, which consisted of the $1,845,622 that was not funded to Gilcrease's trust. As for the "value paid," Denney's estate paid $12,860,749.94 to settle with the trust beneficiaries, plus $2,366,324.05 in attorney's fees, for a total amount of $15,227,073.99. We conclude the Gerhardt affidavit raises a fact issue as to damages suffered by Denney's estate, and therefore precludes the granting of Cox & Smith's no-evidence summary judgment motion on this issue. *See Blake v. Intco Investments of Tex., Inc.,* 123 S.W.3d 521, 525 (Tex.App.-San Antonio 2003, no pet.) (recognizing that Rule 166a(i) does not require the respondent to a no-evidence summary judgment motion to "marshal its proof;" rather, the response need only "point out" evidence that raises a fact issue on the challenged elements).

Additionally, Cox & Smith's traditional motion for summary judgment makes the novel argument that Denney's estate did not suffer any actual damages because the estate simply returned to the beneficiaries money that rightfully belonged to the Gilcrease trust and was not Denney's to begin with. In support, Cox & Smith cites two cases which it argues stand for the proposition that a party is not damaged when it returns money or property to which it was not entitled.[16] However, we cannot agree that Cox & Smith has proved it is entitled to judgment as a matter of law on damages. Again, the Gerhardt affidavit creates a fact issue as to whether Denney's estate suffered damages. Because Cox & Smith has not proved its "disgorgement" theory as a matter of law, we reverse the granting of summary judgment on damages.

### Quasi–Estoppel

■ Finally, in its traditional motion for summary judgment, Cox & Smith asserted that all of O'Donnell's claims are barred by the doctrine of quasi-estoppel. Specifically, Cox & Smith contends that O'Donnell cannot take a position contrary to Denney's position by now contending that the Automation stock should have been classified as community property when Denney consistently asserted it was

---

**16.** *See Nortex Oil & Gas Corp. v. Harbor Ins. Co.,* 456 S.W.2d 489, 494 (Tex.Civ.App.-Dallas 1970, no writ); *see also Ullman v. Verne,* 68 Tex. 414, 4 S.W. 548, 550 (1887).

his separate property during his lifetime. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken, and applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).

Cox & Smith did present some evidence demonstrating that during his lifetime, Denney believed the property in question was his sole and separate property. In particular, a 1969 letter written by Denney to Paul Smith illustrates this belief:

> ... [P]rior to our marriage ... we discussed on numerous occasions that any marriage between us would contain the explicit understanding that all stock owned by me, currently or in the future, would always be my separate property and that all stock owned by her or any stock subsequently acquired in the Gilcrease Oil Company would always be her separate property.... Although it was never set forth in writing, Des Cygne and I had a firm understanding that she had no interest in my stock and I had no interest in her stock in Gilcrease Oil Company.

However, Cox & Smith does not present any evidence showing that it affirmatively advised Denney to characterize the assets in question as community property. As previously noted, Guenther's deposition reveals that Cox & Smith's research "raised a number of additional questions to be answered" about the proper characterization of the disputed assets, but Guenther did not advise Denney that he thought his characterization was incorrect. Instead, Guenther informed Denney that he should "probably" get a declaratory judgment to determine separate versus community property. After Denney informed Guenther that he had decided that [the stock] was his separate property, the subject of a declaratory judgment action was never discussed again. Considering this evidence, and indulging every reasonable inference in favor of O'Donnell, we cannot conclude that Cox & Smith met the burden of proving its affirmative defense as a matter of law. Accordingly, the traditional motion for summary judgment was improperly granted on the ground of quasi-estoppel.

## Conclusion

In summary, we conclude that *Belt* permits O'Donnell, as representative of Denney's estate, to maintain a legal malpractice action against the attorneys who advised Denney during his lifetime. Based on the foregoing reasons, we affirm the trial court's order granting summary judgment as to O'Donnell's claims for breach of fiduciary duty and malice, but reverse that portion of the judgment rendering summary judgment on the legal malpractice claims and remand the cause to the trial court for further proceedings.