The Estate of William H. ARLITT; Margie V. Arlitt, Individually and as an Heir, Beneficiary, and Administratrix/Independent Executrix of the Estate of William H. Arlitt; and William H. Arlitt, III, Sezanne Zeluff, and Janet Arlitt Individually and as Heirs and Beneficiaries of the Estate of William H. Arlitt, Appellants,

v.

Allan G. PATERSON, Jr.; Bayern, Paterson, Aycock & Amen, P.C. (f/k/a Remy, Bayern & Paterson); and Chilton Maverick, Individually, Appellees.

No. 04–97–00750–CV.

Court of Appeals of Texas, San Antonio.

April 14, 1999.

Rehearing Overruled June 15, 1999.

---

W. Scott Carpenter, Carpenter & Associates, Houston, for appellant.

Lewin Plunkett, Cathy J. Sheehan, Plunkett & Gibson, Inc., San Antonio, Joyce W. Moore, Smith & Moore, L.L.P., Dallas, for appellee.

Before TOM RICKHOFF, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

The principal issue presented in this appeal is whether *Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex.1996), precludes a legal malpractice action by a joint estate planning client. We hold *Barcelo* does not apply and therefore reverse the trial court's judgment in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 1987, William H. Arlitt, Jr. (Mr. Arlitt) died, leaving a will drafted in 1983 by Allan G. Paterson, a partner in the firm of Bayern, Paterson, Aycock & Amen, P.C. Mr. Arlitt also left a codicil drafted in 1985 by Chilton Maverick. Under the 1983 will, Mr. Arlitt left his firearms and personal jewelry to his son, William H. Arlitt III (Bill); the remainder of his personal effects and his share of the household effects to his wife, Margie V. Arlitt (Mrs. Arlitt); and the remainder of his estate in equal shares to the Arlitt Grandchildren Trust and the Margie V. Arlitt Trust, which was to benefit Mrs. Arlitt during her lifetime. At Mrs. Arlitt's death, the assets and accumulated income in her trust were to be distributed to the Arlitt's four children—Bill, Kristine, Sezanne, and Janet. However, in the 1985

codicil, Mr. Arlitt reduced Kristine's share of his estate to $50,000 in cash; the remainder of Kristine's share under Mr. Arlitt's 1983 will was devised to her children in trust.

Because the 1985 codicil substantially disinherited her, Kristine opposed the application to probate Mr. Arlitt's 1983 will and 1985 codicil, and this will contest remained pending for almost six years. As a result, the 1983 will and 1985 codicil were not admitted to probate until May 1992 and March 1993, respectively. After four years of the contest litigation, Mrs. Arlitt, individually and as the personal representative of Mr. Arlitt's Estate, and Bill, Sezanne, and Janet (collectively, "the Arlitts") filed this suit against Allan G. Paterson; Bayern, Paterson, Aycock & Amen, P.C.; and Chilton Maverick (collectively, "the Attorneys"). The Arlitts alleged Mr. and Mrs. Arlitt, "on behalf of themselves, and also on behalf of their children (and as their children's agents)," sought and received legal estate planning services from the Attorneys; the Attorneys negligently advised Mr. and Mrs. Arlitt regarding their joint estate plan and negligently drafted Mr. Arlitt's 1983 will and 1985 codicil; and the Attorneys' negligence "[has] or will cause the Arlitts to sustain substantial damages by way of (among other things) will contest(s), construction proceedings, and estate tax consequences." The Arlitts also alleged negligent misrepresentation, negligent undertaking, gross negligence, and breach of express and implied contract.

The Attorneys moved for summary judgment, arguing all of the Arlitts' claims were, in legal effect, legal malpractice claims; all were barred by the statute of limitations; and all suffered a fatal defect—the Arlitts were not in privity with the Attorneys and thus could not establish the duty requisite to a legal malpractice claim. Maverick also contended the trial court lacked subject matter jurisdiction over the Arlitts' claims because they were not appertaining or incident to Mr. Arlitt's estate, and the Arlitts could not as a matter of law establish agency, injury, or recoverable damages. The Arlitts filed a response to each attorney's motion and supported each response with a separate affidavit from Mrs. Arlitt. The affidavit offered in response to Paterson's motion was admitted in its entirety. But large portions of the affidavit offered in response to Maverick's motion for summary judgment were stricken as inadmissible hearsay, parol evidence, conclusory, and argumentative. The trial court granted the Attorneys' motions without stating a reason, and the Arlitts appealed.

## STANDARD OF REVIEW

 Subject matter jurisdiction and statutory interpretation present questions of law and are therefore reviewed de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *petition for cert. filed*, 67 U.S.L.W. 3149 (U.S. Aug. 6, 1998) (No. 98–249); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex. 1997). The de novo standard also governs our review of summary judgments. Therefore, we will uphold a traditional summary judgment only if the movant establishes there is no genuine issue of material fact and he is entitled to judgment as a matter of law on a ground set forth in his motion. TEX.R. CIV. P. 166a(c); *see Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether a genuine issue of material fact exists, we view as true all evidence favorable to the respondent and resolve all doubts in her favor. *Nixon*, 690 S.W.2d at 548–49.

## SUBJECT MATTER JURISDICTION

Maverick's motion for summary judgment contends the statutory probate court lacked subject matter jurisdiction over the Arlitts' claims because they are not "incident or appertaining to" Mr. Arlitt's estate. We disagree.

 Because the Arlitts' claims accrued before the effective date of the 1989 amendments to the Texas Probate Code, the 1985 version of the code controls our

jurisdictional analysis. *See* Act of May 23, 1989, 71st Leg., R.S., ch. 1035, § 18(e), 1989 Tex. Gen. Laws 4162, 4170. Under this version of the code, the statutory probate courts were vested with jurisdiction of matters "incident to an estate." Act of May 17, 1979, 66th Leg., R.S., ch. 713, § 2, 1979 Tex. Gen. Laws 1740, *amended by* Act of May 23, 1989, 71st Leg., R.S. ch. 1035, § 2, 1989 Tex. Gen. Laws 4162, 4163. These courts' jurisdiction thus included "all claims by or against an estate" and "generally all matters relating to the settlement, partition, and distribution of estates of ... deceased persons." Act of May 17, 1985, 69th Leg., R.S., ch. 875, § 1, 1985 Tex. Gen. Laws 2995, 2996, *amended by* Act of May 23, 1989, 71st Leg., R.S., ch. 1035, § 1, 1989 Tex. Gen. Laws 4162. A matter is "incident to an estate" if a review of the pleadings indicates it will "directly impact[ ] the assimilation, distribution, and settlement of [the] estate." *In re Graham*, 971 S.W.2d 56, 59 (Tex.1998) (citing cases).

■ As set forth in the Arlitts' petition, Mrs. Arlitt sues in both her individual and representative capacities. In her representative capacity, Mrs. Arlitt seeks to recover the fees and expenses allegedly paid by the estate as a consequence of the Attorneys' wrongful conduct. If successful, this claim would directly impact the assimilation of assets for the estate and was therefore within the statutory probate court's jurisdiction. *See id.* We therefore hold the claims asserted by Mrs. Arlitt in her representative capacity were within the probate court's subject matter jurisdiction. We likewise hold the claims asserted by Mrs. Arlitt, individually, and her children were also within the statutory probate court's jurisdiction. To do otherwise would require the Arlitts to litigate the same case in two different courts—an absurd interpretation of the statutes and thus not attributable to the Texas Legislature. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 435 n. 1 (Tex.1998); *see also* Tex. Prob.Code Ann. §§ 5(d), 5A(c)(4) (Vernon Supp.1998) (statutory probate court has concurrent jurisdiction over all claims involving a testamentary trust); *id.*

§ 5A(d) ("A statutory probate court may exercise the pendent and ancillary jurisdiction necessary to promote judicial efficiency and economy.").

## NEGLIGENT MISREPRESENTATION

■ The Arlitts sued the Attorneys for negligence, negligent misrepresentation, negligent undertaking of representation, and breach of contract. However, the Attorneys' motions for summary judgment address only the Arlitts' negligence claim because, they contend, all of the Arlitts' claims are legal malpractice claims. We agree the Arlitts' negligence, negligent undertaking, and breach of contract claims are, under Texas law, legal malpractice claims. *See Barcelo*, 923 S.W.2d at 579. But we do not reach the same conclusion with respect to the Arlitts' negligent misrepresentation claims.

■ As discussed below, to prevail on a legal malpractice claim, a plaintiff must show privity in order to prove the attorney owed her a duty of ordinary care. *See id.* But a plaintiff need not show privity in order to establish a duty not to negligently misrepresent. *See Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Accordingly, "[a] negligent misrepresentation claim is not equivalent to a professional malpractice claim," and "an attorney can be subject to a negligent misrepresentation claim in a case in which he is not subject to a professional malpractice claim." *F.E. Appling Interests v. McCamish, Martin, Brown & Loeffler*, 953 S.W.2d 405, 408 (Tex.App.—Texarkana 1997, pet. granted); *see also Safeway Managing Gen. Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166, 169 (Tex.App.— San Antonio 1998, no pet.).

■ Because the Attorneys' motions for summary judgment do not address the Arlitts' negligent misrepresentation claims, the trial court erred in rendering judgment against the Arlitts on these claims, and they must be remanded. *See, e.g.,*

*Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 337 (Tex.1997) (per curiam).

## LEGAL MALPRACTICE

The Arlitts contend the trial court erred in rendering judgment against them on their legal malpractice claims because the Attorneys did not conclusively establish they are barred by limitations or a lack of privity. We agree the Attorneys' summary judgment evidence does not establish their limitations defense. But we are constrained to agree with the Arlitts' privity argument only in part.

### *Limitations*

■■■■■ Legal malpractice claims are governed by the two-year statute of limitations. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). However, the statute does not begin to run until the plaintiff discovers or reasonably should have discovered the wrongfully caused injury. *KPMG Peat Marwick v. Harrison Co. Housing Finance Corp.*, 42 Tex. Sup.Ct. J. 429, 430, 988 S.W.2d 746, 749–50 (1999). The burden to establish this accrual date is on the defendant attorney if he seeks a summary judgment under Rule 166a(c), TEX.R. CIV. P. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

The Attorneys' motions for summary judgment and their supporting summary judgment evidence do not attempt to establish the date the Arlitts' claims accrued, *i.e.*, the date they discovered or reasonably should have discovered the wrongfully caused injury. They instead argue certain tolling agreements they signed do not apply to the Arlitts' claims. But whether these tolling agreements apply to the Arlitts' claims is immaterial unless and until the Attorneys establish an accrual date more than two years before the Arlitts filed suit. We therefore hold the Attorneys failed to conclusively establish their limitations defense to the Arlitts' legal malpractice claims.

### *Privity*

■■■■■ The attorney-client relationship is contractual. *E.g., Parker v. Carna-*

*han*, 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied). As a general rule, if an express or implied contractual duty is negligently performed, causing only economic loss, only a breach of contract action may be maintained; a tort action for negligence is precluded. *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45–46 (Tex.1998). But the opposite rule applies to claims against lawyers. Even if the claim is for the negligent performance of a contractual duty and the loss is solely economic, "[a]n attorney malpractice action in Texas is based on negligence" and sounds solely in tort. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989); *see Patterson & Wallace v. Frazer*, 100 Tex. 103, 94 S.W. 324, 326 (1906); *Patterson & Wallace v. Frazer*, 79 S.W. 1077, 1080–81 (Tex.Civ.App.1904, no writ). Accordingly, a "plaintiff must prove that there is a duty owed to him by the defendant, a breach of that duty, that the breach proximately caused the plaintiff injury and that damages occurred." *Cosgrove*, 774 S.W.2d at 665. Whether a duty is owed is a question of law for the court. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994).

■■■■■ As a general rule, we determine whether a duty is owed by weighing "the risk, foreseeability, and likelihood of injury" "against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor." *Id.* (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983)). Accordingly, whether the parties are in privity of contract is immaterial; indeed, "privity requirements have been dispensed with altogether in negligence suits." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex.1981); *see, e.g., Shatterproof Glass Corp. v. James*, 466 S.W.2d 873, 880 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.) (holding "an accountant may be held liable to third parties who rely upon financial statements, audits, etc., pre-

pared by the accountant in cases where the latter fails to exercise ordinary care in the preparation of such statements, audits, etc., and the third party because of such reliance suffers financial loss or damage."). But privity survives in negligence suits against attorneys. Accordingly, absent privity of contract, "an attorney retained by a testator or settlor to draft a will or trust owes no professional duty of care to persons named as beneficiaries under the will or trust." *Barcelo*, 923 S.W.2d at 579; *see id.* at 576 ("Because the attorney did not represent the beneficiaries, we likewise conclude that he owed no professional duty to them."). Therefore, to establish the duty element of their legal malpractice claims, the Arlitts must establish they were in privity of contract with the Attorneys.

■ The only summary judgment evidence suggesting Maverick and Paterson represented the Arlitts' children is Mrs. Arlitt's statement that she and her husband were acting on behalf of their children and as their agents in consulting with the Attorneys. However, this assertion is conclusory and thus not competent summary judgment evidence. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Watkins v. Hammerman & Gainer*, 814 S.W.2d 867, 870 (Tex.App.—Austin 1991, no writ). Nor is there any summary judgment evidence suggesting the Arlitts' children had the legal right to control their parents' actions in disposing of their estates—an essential aspect of agency. *See Boyd v. Eikenberry*, 132 Tex. 408, 122 S.W.2d 1045, 1047 (1939); *Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex.App.—San Antonio 1992, writ denied). Therefore, because the summary judgment record does not contain any competent evidence suggesting Mr. and Mrs. Arlitt acted as their children's agents or the Attorneys otherwise represented the Arlitts' children, we hold the Attorneys were entitled to summary judgment on the Arlitts' children's legal malpractice claims. *See Barcelo*, 923 S.W.2d at 578–79. *Barcelo* requires that we reach the same conclusion with respect

to the legal malpractice claim brought by Mrs. Arlitt in her capacity as the personal representative of Mr. Arlitt's estate.

■ Because the injuries to Mr. Arlitt's estate alleged by Mrs. Arlitt arose after Mr. Arlitt's death, no legal malpractice cause of action accrued in favor of Mr. Arlitt before his death. *See Felan v. Ramos*, 857 S.W.2d 113, 118 (Tex.App.—Corpus Christi 1993, writ denied) (holding "actionable wrong in a survival action is that which the decedent suffered before death," and "[t]he damages recoverable are those which the decedent sustained while alive"); *Deeb v. Johnson,* 170 A.D.2d 865, 566 N.Y.S.2d 688, 689 (3d Dept.1991). Thus, the only legal malpractice cause of action Mrs. Arlitt might pursue in her capacity as personal representative is one that accrued in favor of the estate after Mr. Arlitt's death. However, the summary judgment evidence conclusively establishes the Attorneys did not represent Mrs. Arlitt in her capacity as personal representative of Mr. Arlitt's estate. We thus hold the trial court correctly rendered judgment against Mrs. Arlitt on the legal malpractice claim brought by her in her capacity as the personal representative of Mr. Arlitt's estate.

But what of Mrs. Arlitt's claim in her individual capacity? Mrs. Arlitt contends *Barcelo* does not apply because, as stated in her affidavits, she and her husband were represented jointly by the Attorneys. The Attorneys, on the other hand, argue they represented only Mr. Arlitt in drafting his will and codicil, as they state in their affidavits. Thus, the issue is not whether the summary judgment evidence raises an issue of fact, because it clearly does, but whether this fact issue is material in light of *Barcelo*.

■ By its terms, *Barcelo* precludes a legal malpractice claim only by an ***unrepresented*** beneficiary. *Barcelo*, 923 S.W.2d at 576 ("Because the attorney did not represent the beneficiaries, we likewise conclude that he owed no professional duty to

them."); *id.* at 578 ("We believe the greater good is served by preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent"). The *Barcelo* rule thus does not deny a cause of action to one of two joint clients. *See* 10 ALOYSIUS A. LEOPOLD & GERRY W. BEYER, TEXAS PRACTICE: TEXAS LAW OF WILLS § 53.1 (Supp. 1998) ("Beneficiaries and attorneys may act with regard to each other to such an extent that an attorney-client relationship actually exists which consequently eliminates the protection extended by [*Barcelo* ]."); John R. Price, *Duties of Estate Planners to Nonclients: Identifying, Anticipating and Avoiding the Problems,* 37 S. TEX. L.REV. 1063, 1071 n. 28 (1996) (when representing a husband and wife in estate planning matters, lawyer has ethical duty not to assist one spouse in a way that would adversely affect the other spouse); *cf. Yaklin v. Glusing, Sharpe & Krueger,* 875 S.W.2d 380, 384 (Tex.App.—Corpus Christi 1994, no writ) (client can have attorney-client relationship with attorney with respect to transaction even if attorney represents another party in the transaction). Nor is the reasoning underlying the *Barcelo* rule persuasive in the joint client context.

According to the supreme court, the rationale necessitating *Barcelo*'s "bright-line" rule was to avoid "creat[ing] a conflict during the estate planning process, dividing the attorney's loyalty between his or her client and the third-party beneficiaries." *Barcelo,* 923 S.W.2d at 578. But this reasoning has no application in the joint client situation because an attorney may not undertake a joint representation if a conflict of interest is presented, and she must withdraw if a conflict subsequently arises. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(b), (e) & cmt. 15, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998).

█ For these reasons, we hold *Barcelo* does not bar a joint client's legal malpractice claim. Accordingly, whether the Attorneys represented both Mr. and Mrs.

Arlitt in their estate planning efforts is a material issue of fact that precludes summary judgment against Mrs. Arlitt, in her individual capacity, on her legal malpractice claim against the Attorneys. *See Yaklin,* 875 S.W.2d at 383–84 (holding appellant's statements that appellee "was my lawyer" and "[a]t no time did he hint or suggest in words or by actions that he was representing the interest of the bank, and not me" raised genuine issue of material fact regarding whether appellee represented both appellant and the bank in the transaction) (brackets in original).

### ATTORNEY'S FEES AND COSTS

Mrs. Arlitt contends the trial court erred in rendering judgment against her on the ground no contract or statute permits her to recover the attorney's fees and costs she incurred individually in the will contest and will construction proceedings. We agree.

█ Attorneys' fees, as such, are not recoverable unless permitted by statute or contract. *Turner v. Turner,* 385 S.W.2d 230, 233 (Tex.1964). But contractual or statutory authorization is not necessary to recover attorneys' fees and costs as damages. *See Nationwide Mut. Ins. Co. v. Holmes,* 842 S.W.2d 335, 341–42 (Tex. App.—San Antonio 1992, writ denied); *Baja Energy, Inc. v. Ball,* 669 S.W.2d 836, 838–39 (Tex.App.—Eastland 1984, no writ); RESTATEMENT (SECOND) OF TORTS § 914(2) (1979). *But see City of Garland v. Booth,* 895 S.W.2d 766, 771–72 (Tex. App.—Dallas 1995, writ denied); *Peterson v. Dean Witter Reynolds, Inc.,* 805 S.W.2d 541, 549 (Tex.App.—Dallas 1991, no writ).

█ Because Mrs. Arlitt seeks to recover the attorneys' fees and costs she incurred in the will contest and construction proceedings as damages, she need not demonstrate statutory or contractual authorization. Accordingly, the trial court erred in rendering a summary judgment against her on this issue.

## CONCLUSION

Because the summary judgment record conclusively establishes the Attorneys did not represent the Arlitts' children or Mrs. Arlitt in her capacity as the personal representative of Mr. Arlitt's estate, we affirm the trial court's summary judgment against Mrs. Arlitt in her representative capacity, William Arlitt III, Sezanne Zeluff, and Janet Arlitt on their legal malpractice claims. But we reverse the trial court's judgment on the legal malpractice claims brought by Mrs. Arlitt in her individual capacity because the summary judgment record raises a material issue of fact as to whether she was a joint client of and thus represented by the Attorneys as to Mr. Arlitt's will and codicil. We also reverse the trial court's judgment against the Arlitts on their negligent misrepresentation claims because these claims were not addressed in the motions for summary judgment. The Arlitts' negligent misrepresentation claims; as well as the legal malpractice claim brought by Mrs. Arlitt in her individual capacity, are thus remanded to the trial court for further proceedings consistent with this opinion.