# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0597-MR

RASHOD JACKSON                                         APPELLANT

           ON APPEAL FROM MCCRACKEN CIRCUIT COURT
V.             HONORABLE TIMOTHY KALTENBACH, JUDGE
                     NO. 17-CR-00701

COMMONWEALTH OF KENTUCKY                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

A McCracken Circuit Court jury convicted Rashod Palmer Jackson of first-degree rape, first-degree sodomy, and first-degree sexual abuse. Following the recommendation of the jury, the trial court sentenced Jackson to twenty years' imprisonment. He now appeals as a matter of right.[1]

On appeal, Jackson raises five issues. Jackson asserts that the trial court erred by allowing the Commonwealth to introduce evidence of prior, uncharged sexual acts in violation of Kentucky Rule of Evidence (KRE) 404(b); that the Commonwealth's failure to timely deliver a recorded jail call violated discovery rules; that the trial court erred by permitting the Commonwealth to

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of . . . imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

improperly bolster the victim's testimony; and that the Commonwealth's improper comments regarding defense counsel warranted a mistrial. Finally, Jackson asks us to find that the trial court abused its discretion in denying his motion for a directed verdict of acquittal. We reject each of Jackson's arguments and affirm his conviction and sentence.

## I. FACTUAL BACKGROUND

Jackson and his son moved in with his partner Sara[2] and her children in the fall of 2012. Five years later, Sara traveled to Waynesboro, Georgia on a multi-week business trip. Jackson and the children remained in Paducah. While in Georgia, Sara received a text message from her daughter Laura. Laura—then 11 years old—told Sara that Jackson had sexually abused her twice since Sara had been gone. Laura alleged that on the first night, Jackson came into her room and partially placed his penis in her vagina. The next night, Laura alleged that Jackson placed his fingers into her vagina, licked her vagina, and again partially placed his penis in her vagina.

Upon receiving Laura's texts, Sara returned home. At this point, Sara and Laura reported the incidents to the Paducah Police Department. Investigators obtained the pajamas and underwear worn by Laura and tested the clothing. The tests revealed nothing of evidentiary value. Additionally, the investigator did not perform a rape kit because more than five days had passed since the alleged sexual abuse.

---

[2] We use pseudonyms to protect the identity of the victim and her family.

Jackson was indicted on one count each of first-degree rape, first-degree sodomy, first-degree sexual abuse, and incest. At trial, the jury heard Laura testify that Jackson had abused her on multiple occasions prior to the charged incidents. Jackson denied all accusations of sexual contact between Laura and himself during his testimony. He testified that while Sara was in Georgia, he would take care of the kids and then visit the woman with whom he was having an affair when the kids were at school or asleep. He claimed that he became aware of the allegations only after Sara returned from Georgia.

Ultimately, the jury found Jackson guilty on all counts. The court sentenced Jackson to the minimum sentence for each offense, set to run concurrently for a total of twenty years.

Additional facts are included below as necessary.

## II. ANALYSIS

**A. The trial court did not err in permitting the introduction of prior allegations of sexual abuse against the defendant.**

Jackson first asserts that the trial court erred in permitting Laura to testify as to prior, uncharged allegations of sexual contact. He claims that KRE 404(b) prohibits the introduction of such testimony because the alleged uncharged acts are not "strikingly similar" to the alleged charged acts. This issue is preserved by defense counsel's objection to the Commonwealth's KRE 404(c) notice, so we review the trial court's decision to admit or exclude evidence for abuse of discretion.[3]

---

[3] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

3

KRE 404(b) generally prohibits the introduction of evidence of other wrongs or acts to show "action in conformity therewith." The rule sets out an exception, providing that other acts evidence may be admissible if offered for "some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[4] Under this exception, "evidence of similar acts perpetrated against the same victim are [sic] almost always admissible."[5]

Here, Laura testified that—in addition to the charged instances—Jackson forced her to perform oral sex on him multiple times when she was in the first grade. She testified that she told her mother about these events. Her mother told her that she was going to speak with Jackson, after which this behavior temporarily ceased. Laura testified, however, that the behavior resumed several years later. At that time, Jackson allegedly licked and attempted to penetrate her vagina.

Jackson argues that this testimony was inadmissible because neither of these alleged incidents concerns acts *similar* to the charged offense. To be similar, Jackson asserts that the prior act and the charged offense must be "so similar as to constitute a signature crime."[6] Under Jackson's theory, any evidence of prior, uncharged sexual contact between the defendant and alleged

---

[4] KRE 404(b)(1).

[5] *Lopez v. Commonwealth*, 459 S.W.3d 867, 875 (Ky. 2015) (quoting *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002)).

[6] *Commonwealth v. Maddox*, 995 S.W.2d 718, 722 (Ky. 1997) (internal quotations omitted).

4

victim(s) must concern the same sexual act underlying the charged offense. Thus, evidence of Jackson forcing Laura to perform oral sex on him would not be admissible in this case because no charged offense arises out of the performance of fellatio.

Jackson interprets KRE 404(b) too mechanically. Our case law is clear. When the prior act concerns sexual contact between the defendant and the same alleged victim, the rule leans in favor of admissibility.[7] In cases involving the same victim, prior acts—even when not identical to the charged conduct—may illustrate an escalating pattern of conduct or suggest the presence of a long-term plan. The cases on which Jackson relies present different scenarios with distinct concerns. *Commonwealth v. Maddox*, for instance, involved the homicide of a child.[8] We confronted the question of whether KRE 404(b) permitted the defendant to confront the child's uncle with evidence of prior child sex abuse allegations.[9] We held that the evidence was inadmissible, reasoning that there was not a sufficiently similar factual connection between the uncharged acts—oral sodomy—and the charged homicide offense.[10] The probative value of prior incidents of sex abuse is significantly lower in a homicide case than a sex abuse case involving the same defendant and victim.

---

[7] *See e.g., Whaley v. Commonwealth*, 567 S.W.3d 576, 587 (Ky. 2019); *Lopez*, 459 S.W.3d at 875.

[8] *Maddox*, 995 S.W.2d at 719-20.

[9] *Id.*

[10] *Id.* at 722.

In this case, the trial court reasonably applied precedent and did not abuse its discretion.

**B. The trial court did not err in permitting the Commonwealth to cross-examine Jackson regarding statements made in a recorded jail call.**

Jackson next maintains that the trial court erred in permitting the Commonwealth to ask about statements he made during a jail call that was untimely disclosed. The introduction of these statements, Jackson asserts, was not harmless error because it allowed the Commonwealth to profit from its failure to comply with the criminal discovery rules.

"[A] discovery violation serves as sufficient justification for setting aside a conviction when there is a reasonable probability that if the evidence were disclosed the result would have been different."[11] And even if a trial court abused its discretion in making an evidentiary ruling, we will disregard errors in admitting or excluding evidence if the errors are harmless.[12] For an error to be deemed harmless, we must be able to "say with fair assurance that the judgment was not substantially swayed by the error."[13]

Ten days prior to trial, Jackson, while incarcerated, spoke with Sara on the phone. The Commonwealth received a recording of this call the day before trial, at which point it delivered a copy of the recording to defense counsel. On the morning of trial, Jackson moved to exclude the recorded call. He argued

---

[11] *Chestnut v. Commonwealth*, 250 S.W.3d 288, 297 (Ky. 2008) (citing *Wood v. Bartholomew*, 516 U.S. 1, 5-6 (1995)).

[12] Kentucky Rules of Criminal Procedure (RCr) 9.24; *Brown v. Commonwealth*, 313 S.W.3d 577, 595 (Ky. 2010).

[13] *Id.*

that the delivery of the call the day prior to trial violated discovery rules and unduly prejudiced his ability to defend himself. The trial court, relying on RCr 7.26, excluded the recording because the Commonwealth failed to demonstrate good cause for its failure to timely deliver a copy of the recording.[14] During his cross-examination of Jackson, counsel for the Commonwealth sought to ask him about certain statements made in the excluded phone call. The trial court permitted the Commonwealth to ask Jackson about the statements but prohibited the Commonwealth from disclosing that the statements were made while Jackson was incarcerated.

Immediately after the court's ruling, the Commonwealth questioned Jackson about the call:

> **Commonwealth (CW)**: Now, on September 14, did you have a phone call with Sara? And did you tell Sara, "The only way to make it go away is to tell them it's a story?" Did you say that to her?
> **Jackson**: I told her to tell the truth.
> **CW**: Did you understand my question?
> **Jackson**: Yes
> **CW**: Did you tell her, "The only way to make it go away is to tell them it's a story?"
> **Jackson**: Yes, I did.
> **CW**: Did you also tell them – tell them that you were not going to cooperate?
> **Jackson**: True.
> **CW**: You said that too, didn't you?
> **Jackson**: Yes.

---

[14] RCr 7.26(1) requires the Commonwealth to produce all written or recorded statements of any witness within forty-eight hours of trial unless there is good cause for the delay.

7

Even assuming that the trial court abused its discretion in allowing cross-examination about the calls—a determination we do not make here—such error was harmless. The crux of Jackson's defense was that Laura and her mother were not credible. While it is possible that the jury viewed such statements as evidence of Jackson attempting to coerce a witness to lie on his behalf, it is equally possible the jury interpreted that statement as merely another claim of innocence. Moreover, even if the Commonwealth were barred from asking these questions, the jury heard sufficient evidence to support its verdict. The jury heard testimony from Laura concerning the events in question and possessed the competency to weigh any credibility concerns. Therefore, even assuming that the trial court abused its discretion in allowing cross-examination about the jail call, we conclude that this error was harmless.

**C. The Commonwealth did not improperly bolster Laura's testimony.**

Jackson next argues that Laura bolstered her own testimony. We disagree. During the Commonwealth's direct examination of Laura, counsel asked if she lied to her mother when she sent the text informing her of Jackson's actions. After Laura replied that she told her mother the truth, defense counsel objected. Defense counsel argued that permitting Laura to affirm her honesty was a form of bolstering. The trial court overruled the objection.

8

The case of *Tackett v. Commonwealth* presented similar facts.[15]  There, the Commonwealth asked a victim whether he was telling the truth during his testimony.  Defense counsel had attacked the victim's credibility during opening statements.  We held that the Commonwealth's questions were not bolstering because the defendant's opening statement placed the victim's credibility directly in issue.

Presented with nearly identical facts, we conclude that *Tackett*'s reasoning applies with equal force to the case before us.  We acknowledge that a victim cannot bolster their own testimony unless first attacked.[16]  However, in the present case, Jackson's counsel informed the jury that they would hear evidence that Laura was not credible.  Furthermore, counsel merely asked Laura whether she had been telling the truth.  As we noted in *Tackett*, such a statement is little more than a reaffirmation of the oath every witness swears.  Based on the foregoing, we conclude the trial court did not err in overruling Jackson's objection.

**D. The Commonwealth's statements concerning defense counsel did not require a mistrial.**

On cross-examination, counsel for the Commonwealth asked Jackson if he spoke with Sara on August 14th.  Counsel interjected as Jackson replied, stating "Just answer the question.  Your defense attorneys will get a chance to spin it."  Defense counsel objected and requested a mistrial on the grounds

---

[15] 445 S.W.3d 20, 32-33 (Ky. 2014).

[16] *Id.* at 32 (citing *Brown v. Commonwealth* 313 S.W.3d at 628 (Ky. 2010)).

that the Commonwealth attacked their credibility before the jury.  The court

sustained the objection but declined to grant a mistrial.  Instead, the Court

issued the following admonition: "All right, ladies and gentlemen, disregard the

comments that were just made about the defense will have a chance to spin

this or do what they want.  Now, go ahead and ask your questions."

A mistrial is a remedy of last resort; under Kentucky law, "the aggrieved

party must exhaust all reasonably available means to have the error rectified . .

. before he can be in a position to demand a mistrial."[17]  Here, the court offered

an alternative remedy in the form of an admonition.  Jurors are presumed to

follow admonitions, so a trial judge's admonition forms a rebuttable

presumption that error has been cured.[18]  This presumption may only be

overcome by showing that there is an "overwhelming probability that the jury

will be unable to follow the court's admonition and there is a strong likelihood

that the effect of the inadmissible evidence would be devastating to the

defendant."[19]

Here, there is little chance that the court's admonition was ineffective.

Though counsel's statement was inappropriate, it did not suggest that counsel

possessed facts outside of the record.  Nor did the statement expressly violate a

rule of evidence or procedure.  Considered in context, Jackson fails to

---

[17] *Romans v. Commonwealth*, 547 S.W.2d 128, 1331 (Ky. 1977).

[18] *See: e.g., Tamme v. Commonwealth*, 973 S.W.3d 13, 26 (Ky. 1998); *Hardy v. Commonwealth*, 719 S.W.2d 727 (Ky. 1986).

[19] *Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky. 2003).

demonstrate that the statement presented such a great risk of undue prejudice that the court's admonition must be found ineffective.

**E. The trial court did not err in denying Jackson's motion for a direct verdict of acquittal.**

Finally, Jackson argues that the trial court erred in denying his motions for directed verdict of acquittal. At the close of the Commonwealth's case, Jackson moved for a directed verdict. He argued that the Commonwealth failed to introduce evidence of sodomy because Laura had not testified that oral sex occurred. At the close of all the evidence, Jackson renewed his motion for a directed verdict.

The standard of review for denial of a motion for directed verdict is as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[20]

Here, the jury heard testimony from Laura consistent for each of the charged offenses. Laura testified that Jackson had partially inserted his penis into her vagina; placed his mouth on her vagina; and inserted his fingers into

---

[20] *Commonwealth v. Benham,* 816 S.W.2d 186, 187–88 (Ky. 1991).

11

her vagina. Though Jackson raises numerous issues concerning the veracity of Laura and Sara, each of those issues presents questions of credibility and weight which were considered by the jury. Based on this testimony, a reasonable jury could conclude that Jackson committed the charged offenses. We hold that the trial court did not err in denying the motions for directed verdict.

### III. CONCLUSION

For the reasons stated herein, we affirm.

All sitting. Hughes, Conley, Lambert and VanMeter, J.J., concur. Minton, C.J., concurs in result only by separate opinion in which Keller and Nickell, JJ., join.

MINTON, C.J., CONCURRING IN RESULT ONLY: I concur in the result reached by the majority, but I respectfully disagree with the majority's conclusion and reasoning as to the trial court admitting past uncharged sex crimes alleged to have been committed by Jackson against the same victim. Admitting this evidence was error because intent, identity, motive, and similar nonpropensity issues were not in dispute. The majority is correct that Jackson's basic relevance argument based on act dissimilarity is unavailing. Still, the nonpropensity uses of this evidence purported by the Commonwealth were dubious at best, and the evidence should not have been admitted.

KRE 404(b) reads: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." "[T]he thrust of KRE 404(b) has always been interpreted

12

as exclusionary in nature." *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994). It is unquestionable that the series of abuses inflicted on Laura when she was in the 1st and 5th grades constitute the very type of bad acts that are generally inadmissible under KRE 404(b), as they are easily used to prove a general criminal propensity instead of the criminal acts for which Jackson was being tried. Still, KRE 404(b)(1) would admit evidence of these acts for a valid nonpropensity purpose despite the risk of an improper or unfair propensity inference with which the trial court is trusted to balance against the probative value of the evidence.

Seemingly over the last two or so decades, a frequently cited rule statement developed in Kentucky law that "evidence of similar acts perpetrated against the same victim [is] almost always admissible." The root source of this quote appears to be *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002), which, in turn, cites to *Price v. Commonwealth*, 31 S.W.3d 885, 888 n. 4 (Ky. 2000).[21] This partial statement extracted from *Noel* has since been cited in this manner, including by this majority opinion, Jackson's own brief, and in other cases published as recently as last year, e.g., *Howard v. Commonwealth*, 595 S.W.3d 462, 481 (Ky. 2020). The trial court even articulated a similar rule while concluding a bench conference at trial when it ruled the past acts admissible: "The rule in Kentucky is generally that if [the past acts] involve the

---

[21] *Price* itself concerned the similarity of acts against the same victim for purposes of severing charges into different trials, under which the rule is sufficiently similar or connected acts can be tried in the same trial proceeding, a different context for similarity analysis than under KRE 404.

13

same victim, then as long as it is relevant, it's admissible." This is simply not a true statement of the rule, and it is not true in a very important way.

In fuller context, the *Noel* Court stated that similar past acts against the same victim are "almost always admissible *for those reasons*" (emphasis added), "those reasons" referring to nonpropensity uses under KRE 404(b)(1), including to prove "intent, plan, or absence of mistake or accident." *Noel*, at 931. The incomplete version of the *Noel* quote, to the extent it guides application, is in direct tension with KRE 404(b)'s general prohibition against the admission of past acts, applicable to all cases and defendants. KRE 404(b) still stands, but its exceptions have apparently been read to swallow the rule. In other words, it is simply not true that "evidence [of past sexual abuse] is almost always admissible" against a criminal defendant, because nonpropensity issues like intent, planning, and absence of mistake are not common to "almost al[l]" sex crime cases. Facts of the same victim, same act are not what truly control. Rather, it is the use to which the evidence is put. While same victim, same act context might have some general tendency to be relevant to circumstantial issues like state of mind, plan, or common scheme than in cases of different victims and different acts, the primary and predominant *use* of the evidence still controls and must still be nonpropensity, assuming the words of KRE 404(b) have any meaning and effect at all.

In filing a KRE 404(c) notice that it intended to introduce evidence of Jackson's past conduct, the Commonwealth argued broadly that the evidence was offered to "prove motive, opportunity, intent, preparation, plan, knowledge,

14

identity and/or absence of mistake or accident." This appears to be nothing more than a boilerplate list of hypothetical nonpropensity uses listed under KRE 404(b)(1), yet it is not at all apparent where any of these issues were *both* material *and* disputed in Jackson's case. So the evidence could not truly have been used for those purposes. Similarly, the majority opines that these past uncharged abuses *may* have illustrated an escalating pattern of conduct or a long-term plan to commit the criminal acts charged. True, that might be conceivable in an alternate trial context where different issues were raised and different facts had to be proved, or where Jackson had been charged and tried for those acts. But as far as I can see, none of the purported uses—proving motive, intent, plan, "pattern," etc.—were in issue for purposes of KRE 404(b)(1) because Jackson's only defense was that he did not commit the alleged acts at all and because rape is an act-crime. By the very nature of the evidence presented and of Jackson's defense, the only thing to prove was that he committed the criminal acts on the specific occasions for which he was being tried, not that he intended to commit the acts, not that he planned to, and not what his motive was.

For instance, using the evidence to prove "intent" is perhaps the least convincing of the Commonwealth's 404(b)(1) purposes. This Court has held that "under KRE 404(b), evidence of other crimes should be admitted to prove intent *only when* [*intent is*] *in genuine dispute. . . .* Of course, even when in dispute, a trial court must still determine that the evidence is relevant to prove the intent to commit *the crime charged.*" *Walker v. Commonwealth,* 52 S.W.3d

15

533, 535–36 (Ky. 2001) (emphasis added). "There is a very fine line between the use of other crimes evidence to prove intent and the use of such evidence to prove general propensity to commit crime, and as a result there is a greater than normal potential in this 'other purpose' category for abuse of the 'other crimes' law." Robert G. Lawson, Kentucky Evidence Law Handbook § 2.30[4][b] (2020). Concerning cases where past acts were deemed admissible to prove intent, Professor Lawson observes: "It needs to be noticed that in each of these cases *intent was an element of the charged offense, intent was genuinely in dispute,* and the uncharged crime was relevant to prove intent to commit the charged crime."[22]

Intent is not an element of rape, sodomy, or sexual abuse,[23] so it was at no point in this trial a substantive issue whether Jackson intended to force himself onto Laura sexually on the charged occasions or he did not. Intent was also irrelevant as a factual matter to prove he actually committed the later acts. Nor was this past-acts evidence inextricable or necessary "context" to prove Jackson raped Laura on the charged occasions. KRE 404(b)(2).

Similarly, the motive for any sexual abuse was not in dispute. The motive for such crimes are obviously and inherently sexual, so any purported use to that end was pretextual or inadequate.

---

[22] *Id.* (emphasis added).

[23] *Isaacs v. Commonwealth*, 553 S.W.2d 843, 845 (Ky. 1977) (reaffirming that rape in the first degree is a crime without regard to the reasons or intent with which it was done).

Using the past acts to prove identity also fails because identity was not an issue in this case where the defendant simply argued he never committed the act, not that someone else committed the act. While the Commonwealth cites in its brief *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994), to support the use of the evidence to prove a "pattern of conduct," which, incidentally, the trial court did not expressly recognize as the evidentiary purpose at the bench conference, *Bell* was more concerned with proof of the identity of the perpetrator based on the "crimes [being] so similar *and so unique* as to indicate a reasonable probability that the crimes were *committed by the same person*." (emphasis added).

The same can be said of any "plan and preparation" to rape Laura, which the trial court found "primarily" established an exception. Especially considering the years separating the cluster of past acts and the charged acts, a theory of a single, coherent plan and preparation strikes me as patently implausible given the nature of the crimes, contrast with criminal conspiracy or inchoate crimes. For that purpose, "[s]uch evidence is not properly admissible under KRE 404(b) as it is too remote in time." *Roberts v. Commonwealth*, 599 S.W.3d 841, 848 (Ky. 2020).

By contrast, Federal Rules of Evidence (FRE) 413, for similar crimes of sexual assault, and FRE 414, for similar crimes of child molestation, carve out exceptions to the federal equivalent prohibition against propensity and character evidence under FRE 404. These federal rules extend powerful permission to federal judges and prosecutors to admit past acts in sex-crime

17

trials to prove the likelihood of the charged acts, *as propensity and character evidence.*[24]  That was Congress's choice.  Kentucky has no equivalent exception to its bar against character evidence, although some Kentucky decisions appear to have, at least in effect, read that liberality into KRE 404(b)(1).  Perhaps the federal policy is preferable, offering easier conviction of those accused of sex crimes.  But it is not the Kentucky policy.  The Kentucky Rules instead require a valid, i.e., relevant and material, *non*propensity purpose, with relevance determined by an actual and genuine dispute of intent, motive, plan, etc.  This case presents no such actual or genuine dispute as to any of the purported reasons.

The Commonwealth argues correctly that the jury does not have to consider the evidence in a vacuum but misapplies the principle to this case.  The Commonwealth is afforded flexibility in establishing necessary context for the particular charged acts, and it is allowed to do this by establishing a foundational connection between the evidence offered and the particular crimes charged.  That principle is not license, however, to provide the jury with whatever acts from whatever context, however unnecessary and cumulative, to unduly prove a defendant's tendency to commit similar offenses.  Perhaps certain defendants have a propensity to commit such crimes, often against the

---

[24] "[FRE 413, 414, and 415] create exceptions to Federal Rule of Evidence 404(b), which provides, 'Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character'. . . . Rules 413, 414 and 415[] admit evidence of an alleged perpetrator's propensity. . . ."  Wright & Miller, 23 Fed. Prac. & Proc. Evid. § 5382 (2d ed.) (2021).

same victim. But crimes are constituted by particular acts, not propensity or character, and KRE 404(b) guards against such prosecutions, disallowing past acts offered under the guise of "context" or general nonpropensity, unless the evidence is inextricable and inseparable from the Commonwealth's evidence proving the immediate charges. KRE 404(b)(2). This is not at all to say that such cases do not exist, one could argue they exist more often than not, but this was not such a case.

The "same victim, similar act" rule, wherever it came from, is too sweeping and generalized to comport with the language and purpose of KRE 404(b). Rather, "[b]ecause the degree of potential prejudice associated with evidence of this nature is significantly higher, exceptions allowing evidence of collateral criminal acts must be strictly construed." *Bell*, 875 S.W.2d at 889 (quotations omitted). Had Jackson's past acts properly been charged and prosecuted in the same case, such evidence could obviously be put on to prove those prior acts themselves, even at the risk of the jury inferring a criminal propensity between the acts. But those past acts, having not been charged or offered for a legitimate purpose, constituted propensity evidence, and none of the purported reasons given by the Commonwealth or the trial court in overruling the objection are plausible given the issues and evidence at trial.

Admitting the past acts in this trial context was an abuse of discretion, and I part company with the majority only on that issue. I would, however, still affirm the judgment, finding the error harmless, because the victim's

19

testimony was complete, competent, and credible as it pertained to the instances of conduct charged in the indictment.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Department of Public Advocacy

COUNSEL FOR APPELLEES:

Daniel Jay Cameron
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General